**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
NEWARK DIVISION

_____

| | |
|---|---|
| VERONICA DOE, | ) |
| | ) Civil Action No. 21-20763(ES)(MAH) |
| Plaintiff, | ) |
| | ) |
| v. | ) **BRIEF IN SUPPORT OF** |
| | ) **PLAINTIFF'S MOTION FOR** |
| RUTGERS UNIVERSITY, the State | ) **SUMMARY JUDGMENT ON** |
| University of New Jersey, & SCOTT | ) **TITLE IX CLAIMS** |
| STROTHER, in his personal and | ) |
| official capacity, | ) Oral Arguments Requested |
| | ) Motion Day: July 15, 2024 |
| Defendants. | ) |
| | ) |

_____

Laura L. Dunn, Esq. (*pro hac vice*)
L.L. DUNN LAW FIRM, PLLC
745 Fifth Avenue, Suite 500
New York, NY  10151-0099
T: 646-864-6506
F: 212-207-3111
LLD@LLDunnLaw.com

Michael J. McFarland (N.J. Bar No. 212292016)
Gaetano D'Andrea (*pro hac vice*)
LAFFEY BUCCI KENT, P.C.
1100 Ludlow Street, Suite 300
Philadelphia, PA  19107
T: 215-399-9255
F: 215-857-0075
MMcfarland@laffeybuccikent.com
GDAndrea@laffeybuccikent.com
CVGDTeam@laffeybuccikent.com

*Counsel for Plaintiff Veronica Doe*

## TABLE OF CONTENTS

**Cover Page** ................................................................. i

**Table of Contents** ...................................................... ii

**Table of Authorities** ................................................ iv

**Brief in Support of Plaintiff's Motion for Summary Judgment on Title IX Claims** ....................................................... 1

**Introduction** ........................................................... 1

**Standard of Review** ................................................. 7

**Arguments** .............................................................. 8

I. <u>Count II</u>: Title IX Discrimination ................................. 9

II. <u>Count I</u>: Title IX Deliberate Indifference ........................ 15

A. Defendant Rutgers had actual notice of Ms. Doe's on-campus rape ................................................................ 16

B. Defendant Rutgers exercised substantial control over T.D. in Talbott Apartments .................................................. 17

C. Defendant Rutgers demonstrated deliberate indifference ................ 18

1. Defendant Rutgers obstructed Ms. Doe's ability to get help ........................................................ 19

2. Defendant Rutgers demonstrated indifference to Ms. Doe's safety ...................................................... 21

3. Defendant Rutgers needlessly delayed Ms. Doe's complaint ..................................................... 23

4. Defendant Rutgers wrongfully deferred the complaint to the NJIT ............................................................ 24

5.  Defendant Rutgers delayed its investigation until July 2020 .... ............................................................................................. 25

6.  Defendant Rutgers withheld T.D.'s appeal and delayed that process ............................................................................ 26

D. Ms. Doe suffered denied educational access .................................. 27

III. <u>Count III</u>: Title IX Hostile Environment ..................................................... 29

**Conclusion** ................................................................................................. 32

**Certificate of Service** ................................................................................. 34

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ................................ 7

*Baxter v. Palmigiano*, 425 U.S. 308 (1976) ................................ 3

*Blunt v. Lower Merion Sch. Dist*., 767 F.3d 247 (3d Cir. 2014) ................................ 8

*Cannon v. Univ. of Chi*., 441 U.S. 677 (1979) ................................ 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................ 7

*Davis ex rel. v. Monroe Cty. Bd. of Educ*., 526 U.S. 629 (1999)
................................Passim

*Doe v. Fairfax Cty. Sch. Bd*., 10 F.4th 406 (4th Cir. 2021) ................................ 16

*Doe v. Mercy Catholic Med. Ctr*., 850 F.3d 545 (3d Cir. 2017) ................................ 29

*Doe v. N. Penn. Sch. Dist*., 636 F.Supp.3d 519 (E.D. Penn. 2022) ......... 18, 22, 29–30

*E.N. v. Susquehanna Tp. Sch. Dist.*, No. 1:09-cv-1727, 2011 WL 3608544
(M.D. Penn. July 5, 2011) ................................ 29

*Fem. Maj. Found. v. Hurley*, 911 F.3d 674 (4th Cir. 2018) ................................ 18

*Franklin v. Gwinnett Cty. Pub. Schs*., 503 U.S. 60 (1992) ................................ 8, 10

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) ................................ 9, 10, 16

*Goodwin v. Pennridge Sch. Dist*., 389 F. Supp. 3d 304 (E.D. Penn. 2019) ................................ 29

*Graham Eng. Corp. v. Adair*, Civil Action No. 1:16-cv-2521, 2018 WL 1907063,
(M.D. Penn. Apr. 23, 20182022) ................................ 1

*Hall v. Millersville Univ*., 22 F.4th 397 (3d Cir. 2022) ................................Passim

*Jackson v. Birmingham Bd. of Educ*., 544 U.S. 167 (2005) ................................ 8, 10

*Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093 (9th Cir. 2020) ........................ 10

*Kegerise v. Susquehanna Twp. Sch. Dist.*, 321 F.R.D. 121 (M.D. Penn. 2016) ............ ................................................................................................................................. 1

*Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861 (W.D. Texas 2019) ........................... 10

*M.D.B. v. Punxsutawney Christian Sch.*, 386 F.Supp.3d 565 (W.D. Penn. 2019) .... 16

*Mosaid Techs., Inc., v. Samsung Elec. Co., Ltd.,* 348 F. Supp. 2d 332, 335 (D.N.J. 2004) ........................................................................................................................ 5

*Matthews v. Kidder, Peabody & Co.*, 260 F.3d 239 (3d Cir. 2001) ........................ 7–8

*Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81 (3d Cir. 1982) ........................ 7

*Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001) ............................. 29

*Sec. & Exch. Comm'n v. Graystone*, 25 F.3d 187 (3d Cir. 1994) .............................. 3

*Shields v. Zuccarini*, 254 F.3d 476 (3d Cir. 2001) .................................................... 8

*Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170 (10th Cir. 2007) ................. 10, 13

*Thomas v. Cumberland County,* 749 F.3d 217, 222 (3d Cir. 2014) ........................... 7

*Todaro v. Township of Union*, 27 F.Supp.2d 517 (D.N.J. 1998) .............................. 11

## **Statutes**

20 U.S.C. § 1092(f) ...........................................................................................SOF 7

20 U.S.C. § 1681 .........................................................................................Brief 8, 13

N.J.S.A. 18A:61E–2 .........................................................................................SOF 8

N.J.S.A. 18A:65–33.1 .....................................................................................SOF 13

## Rules

Fed. R. Civ. P. 8 ................................................................... SOF 1; Brief 1, 2

Fed. R. Civ. P. 37 ........................................................................................ 5

Fed. R. Civ. P. 56 ........................................................................... Brief 7, 8

L. Civ. R. 56.1(a) .......................................... SOF 1, 20, 21, 29, 34; Brief 1

## Regulations

34 C.F.R. § 106.8 .............................................................................. SOF 4, 7

34 C.F.R. § 668.46 ................................................................................ SOF 7

## Guidance

U.S. Dep't. of Educ., OCR, "Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties" (2001) ..... SOF 7

# BRIEF IN SUPPORT OF PLAINTIFF'S
# MOTION FOR SUMMARY JUDGMENT ON TITLE IX CLAIMS

Plaintiff, Veronica Doe ("Ms. Doe"), by and through counsel, hereby provides this brief in support of her simultaneously filed "Motion for Summary Judgment on Title IX Claims" ("Motion"), along with her Statement of Material Facts Not in Dispute ("SOF") per L. Civ. R. 56.1(a), and hereby argues as follows:

## Introduction[1]

Defendant Rutgers had "care, custody, and control" over its physical campus and buildings. (SOF, ¶ 48.) Defendant Rutgers is a federal funding recipient subject to the requirements of Title IX. (SOF, ¶ 1.) Title IX obligates Defendant Rutgers to address third party campus sexual misconduct when impacting the educational access

---

[1] Wherever Ms. Doe's Statement of Material Facts Not in Dispute (SOF) contains an asterisk "*", Defendants' Answer failed to deny Ms. Doe's Complaint allegation either by claiming it was a legal conclusion or written material speaking for itself, such that it constitutes a factual admission under Fed. R. Civ. P. 8(b)(6). *See, e.g., Kegerise v. Susquehanna Township Sch. Dist.*, 321 F.R.D. 121, 124 (M.D. Penn. 2016) ("Defendants are simply incorrect in contending that they could respond to conclusions of law by asserting no response is necessary. Rule 8(b) permits a party only three ways to respond to an allegation: (1) admit it (2) deny it or (3) state that the party lacks knowledge or information sufficient to form a belief about the truth of the allegation.") (citing cases); *Graham Eng. Corp. v. Adair*, Civil Action No. 1:16-cv-2521, 2018 WL 1907063, *2 (M.D. Penn. Apr. 23, 2018) (not reported) ("The bare assertion that a document speaks for itself and that 'no responsive pleading is required' falls short of the requirements of Rule 8(b)"; therefore, "the response that a document speaks for itself is generally deemed an admission that the contents of a document are what they are purported to be") (citing cases).

of its students. (*Id.*, ¶ 2.) As a prospective student, Ms. Doe reviewed and considered Defendant Rutgers' promotional materials on Title IX with her family. (*Id.*, ¶ 18.)

For the 2019–2020 school year, Ms. Doe enrolled in and attended Defendant Rutgers, the State University of New Jersey, at Newark ("Defendant Rutgers") as a freshman undergraduate student living on campus in Woodward Hall. (SOF, ¶¶ 19, 20.) She started enrollment with three Advance Placement credits in the sciences (*id.*, ¶ 17) and selected a major of neuroscience (*id.*, ¶ 16). In the Fall 2019 semester, Ms. Doe started suffering from a seizure disorder requiring her to receive disability accommodations from Defendant Rutgers, by and through its Campus Awareness Respondent Education (CARE) Team. (*Id.*, ¶¶ 22, 23.)

Defendant Rutgers has a consortial relationship with the New Jersey Institute of Technology (NJIT) allowing their respective students to attend joint events, cross-enroll in courses, access campus building, and complete joint degrees. (SOF, ¶¶ 5[2]–8.) At all times relevant to this action, Defendant Rutgers lacked any consortial agreements with the NJIT regarding campus safety and student disciplinary issues. (*Id.*, ¶¶ 9–11.)

---

[2] In violation of Fed. R. Civ. P. 8(b), Defendants ***repeatedly*** and ***falsely*** denied this allegation (Compl., ¶¶ 2, 12, 54, 98; Answer, ¶¶ 2, 12, 54, 98) before Defendant Rutgers' deposition (Ex. 3, Def. Rutgers (Gunkel) dep., 22:11–15.) Defendants even denied information on its public website about this consortium (*id.*, ex. 17 (Plaintiff 226); Compl., ¶ 13; Answer, ¶ 13) and denied Plaintiff's request for admission on point (Ex. 3, Def. Rutgers (Gunkel) dep., ex. 18 at Adm. Nos. 1–2).

Without such agreements, Defendant Rutgers wrongfully deferred its Title IX obligation to other educational institutions. (*Id.*, ¶¶ 12, 28, 29, 32–47.)

On March 5, 2020, Ms. Doe attended a fraternity party at the NJIT, which is adjacent to Defendant Rutgers' Newark campus. (SOF, ¶¶ 10, 19, 78.) When fraternity members became concerned at Ms. Doe's intoxication, one of them (A.N.) walked her home to Talbott Apartments. (*Id.*, ¶¶ 23, 80, 60.) Defendant Rutgers' owns and controls Talbott Apartments as a residence hall on its Newark campus with a security checkpoint requiring campus guests to sign in and abide by certain safety protocols and procedures. (*Id.*, ¶¶ 59–62.)

Early on March 6, 2020, NJIT student and fraternity member Tomasz P. Dulian (T.D.) entered Talbott Apartments asking to visit Ms. Doe. (SOF, ¶¶ 81, 82.) T.D. knew the security protocol for Talbott Apartments since he regular visited another Rutgers student. (*Id.*, ¶ 27.) Indeed, as an NJIT student, T.D. regularly came onto Defendant Rutgers' Newark campus to access its buildings, socialize, and buy food during the day, and could enroll in its courses. (*Id.*, ¶¶ 26, 27.)

After entering her dorm, Defendant Rutgers found that T.D. raped Ms. Doe while she was too intoxicated to consent. (SOF, ¶¶ 83, 84.[3]) That same day, Ms. Doe

---

[3] This Court should draw an adverse inference against T.D.'s assertion of the Fifth Amendment privilege against self-incrimination regarding the campus rape. See, e.g., *Sec. & Exch. Comm'n v. Graystone*, 25 F.3d 187, 190 (3d Cir. 1994) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

reported the campus rape to Defendant Rutgers (*id.*, ¶¶ 85, 86) and the University Police Department (UPD) on March 8, 2020 (*id.*, ¶ 101). Despite this actual notice of the rape, in its aftermath, Defendant Rutgers failed to provide Ms. Doe with available safety measures and academic accommodations, such as a campus ban or no-contact order against T.D. (*Id.*, ¶¶ 30–52, 54, 56, 63, 66.) Defendant Rutgers did not have any set protocol for when campus bans could or should be issued for campus sexual misconduct (*id.*, ¶¶ 53–58), but its Title IX policies and procedures listed them as remedial measures (*id.*, ¶¶ 33, 36, 44, 47).

With T.D.'s fraternity being directly across the street from Talbott Apartments, Ms. Doe refused to stay there, and she ultimately left the Newark campus to ensure her safety and wellbeing. (SOF, ¶ 100.) After the on-campus rape, Defendants failed to offer Ms. Doe any interim safety measures of housing accommodations,[4] so she did not return to campus for the Spring 2020 semester. (*Id.*, ¶¶ 66, 96, 105, 110.)

In the Fall 2020 semester, Ms. Doe sought a campus ban and safety plan before returning to campus and Defendant Rutgers denied the former and never finalized the latter. (*Id.*, ¶¶ 147, 149, 150, 151, 163–166, 168, 170.) Without safety measures, Defendant Rutgers had left Ms. Doe—*a campus rape victim*—unprotected during the COVID-19 pandemic when people's identities were obscured by masks, leaving her in

---

[4] Indeed, Defendant Rutgers had also denied her safety related housing accommodations during the Fall 2019 semester. (SOF, ¶ 21.)

*daily* fear of running into T.D. (*Id.*, ¶ 218.) Ms. Doe's suffered exacerbation of her pre-existing seizure condition, so she obtained a service dog. (*Id.*, ¶¶ 139, 154, 219.)

On top of this intolerable situation, Defendant Rutgers failed to preserve crucial video evidence regarding the on-campus rape and the UPD misplaced Ms. Doe's rape kit while the prosecutor's office failed to return her calls.[5] (*Id.*, ¶¶ 145, 227.) Despite applying for a civil restraining order on August 17, 2020 (*id.*, ¶ 167), and receiving a temporary one on October 16, 2020 (*id.*, ¶ 184), law enforcement failed to serve this on T.D. until March 12, 2021—***147 days*** after its issuance (*id.*, ¶¶ 184, 207). In the interim, despite its authority to ban T.D. based on this order, Defendant Rutgers' UPD still refused to do so. (*Id.*, ¶ 57.) Concerningly, as one campus advocate noted, no campus sexual assault cases are being prosecuted on the Newark campus. (*Id.*, ¶ 229.)

On Monday, March 9, 2020, Title IX Coordinator Scott Strother (hereinafter "Defendant Strother") told Ms. Doe that she could file a Title IX complaint with Defendant Rutgers. (SOF, ¶¶ 108, 109.) Defendant Rutgers had legal obligations to address third-party campus sexual misconduct committed through a "prompt and equitable" grievance process. (*Id.*, ¶¶ 2, 28, 29.) On March 16, 2020, Ms. Doe wanted

---

[5] See Fed. R. Civ. P. 37(e) (requiring judicial remedies when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored); see also, e.g., Mosaid Techs., Inc., v. Samsung Elec. Co., Ltd., 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (discuss sanctions for spoliation including an adverse inference) (citations omitted).

to pursue a complaint against T.D. (*id.*, ¶ 125) but Defendants ***falsely*** claimed they lacked "jurisdiction" regarding T.D.'s on-campus rape (*id.*, ¶¶ 126, 127). Defendants then delayed taking Ms. Doe's complaint before fully deferring to the NJIT's process rather than initiating its Title IX grievance process. (*Id.*, ¶¶ 128, 129.)

By July 2020—***five months*** after her report, Ms. Doe hired counsel at personal expense to demand Defendants comply with Title IX and resolve her complaint while issuing safety measures. (SOF, ¶¶ 147, 149, 150.) Title IX Investigator Alicia Ponce admitted Defendant Rutgers' investigation was "untimely, as in not promptly or quickly completed." (*Id.*, ¶¶ 158, 201.) Indeed, she testified: "I did have a concern with regards to how long it was taking . . . . I was essentially shocked that it was, you know, taking this long." (*Id.*, ¶ 200.) For example, no witnessed were interviewed until January 2021—***eleven months*** after Ms. Doe's report, and not all identifiable witnesses were ultimately interviewed. (*Id.*, ¶¶ 171, 172, 199.)

From early March 2020 until the end of February 2021—***twelve months*** after her report, Defendant Rutgers delayed resolution of Ms. Doe's rape complaint while T.D. remained able to access its Newark campus and enroll in courses. (SOF, ¶¶ 25 – 27, 5–9; *contra id.*, ¶¶ 28–47.) Despite promising a Title IX determination in December 2020 (*id.*, ¶ 191), Defendant Rutgers did not provide this until February 25, 2021—***two days after*** the U.S. Department of Education's Office for Civil Rights (OCR) notified it that Ms. Doe had filed a Title IX complaint against it (*id.*, ¶¶ 202,

203).  After finding T.D. responsible for the rape (*id.*, ¶ 203), Defendant Rutgers still did not conclude the Title IX grievance process until it banned him on May 20, 2021––*fourteen months* after Ms. Doe's rape report (*id.*, ¶¶ 204–211).

During this ordeal, to escape from T.D.'s ongoing presence on campus, Ms. Doe arranged to transfer to an out-of-state university.  (SOF, ¶¶ 215, 222, 223.)  Ms. Doe suffered economic harm (*id.*, ¶¶ 216, 217), physical and psychological harm (*id.*, ¶¶ 218, 219), academic harm (*id.*, ¶¶ 229–224), violation of her rights (*id.*, ¶¶ 225, 226), and denied justice (*id.*, ¶¶ 227–229).

## Standard of Review

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Thomas v. Cumberland County,* 749 F.3d 217, 222 (3d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir. 1982) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).  The movant must show that the nonmovant would not prevail at trial based on admissible evidence in the record.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The movant's burden is to "demonstrate the absence of a genuine [dispute] of material fact." *Matthews v. Kidder,*

*Peabody & Co.*, 260 F.3d 239, 250 (3d Cir. 2001). Upon meeting that burden, it shifts to the nonmovant, who "must set forth specific facts showing a genuine issue for trial." *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). Conversely, when a nonmovant defend by showing "there is not a genuine dispute with respect to a material fact," then the movant is entitled to judgment as a matter of law. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). For the reasons stated herein, Ms. Doe is entitled to summary judgment pursuant to Fed. R. Civ. P. 56(a).

## Arguments

Defendant Rutgers egregiously violated Ms. Doe's Title IX rights. Title IX states in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *Hall v. Millersville Univ.*, 22 F.4th 397, 404 (3d Cir. 2022 (quoting 20 U.S.C. § 1681(a)). "[T]he U.S. Supreme Court has recognized that Title IX implies a private right of action and that monetary damages are available in such suits." *Hall*, 22 F.4th at 404 (citing *Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 76 (1992) & *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677, 690–93 (1979))). Undisputedly, Defendant Rutgers is a federal funding recipient subject to Title IX (SOF, ¶ 1), and Ms. Doe was a student attending its Newark campus during the 2019-2020 and 2020-2021 school years (*id.*, ¶¶ 19, 170,

198). On this undisputed foundation, Ms. Doe filed this action raising three distinct liability theories arising out of Defendant Rutgers' appalling Title IX violations:

I.   <u>Count II</u> (Title IX Sex Discrimination): Defendant Rutgers intentionally discriminated against Ms. Doe by falsely claiming to lack jurisdiction over her on-campus rape complaint against Tomasz Dulian (T.D.), delaying her access to its Title IX grievance process for at least four months.

II.  <u>Count I</u> (Title IX Deliberate Indifference): Defendant Rutgers demonstrated deliberate indifference towards T.D.'s on-campus rape of Ms. Doe by failing to issue available interim safety measures and then failing to promptly and equitably investigate and resolve her Title IX complaint.

III. <u>Count III</u> (Title IX Hostile Environment): Defendant Rutgers intentionally discriminated against Ms. Doe—*its own student*—by repeatedly delaying the issuance of a campus ban or any other safety measure against T.D.—*a non-Rutgers student*—to remedy the hostile educational environment.

(ECF No. 1, at 19–25)

For the reasons set forth more fully below, Ms. Doe argues that there is no genuine dispute of material fact precluding summary judgment on each count, and that she is entitled to summary judgment as a matter of law regarding the same.

## I.   <u>Count II</u>: Title IX Discrimination

Ms. Doe is entitled to summary judgment on Count II because Defendant Rutgers undisputedly misrepresented its Title IX jurisdiction to Ms. Doe, which constitutes sex discrimination as a matter of law. The U.S. Supreme Court has held that federal-funding recipients, like Defendant Rutgers, may be held liable under Title IX for their discriminatory conduct. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91 (1998) (holding a recipient is liable under Title IX "for its own

official decision" to discriminate).[6]  Expounding on such precedent, the Third Circuit has held: "Title IX's plain language unquestionably places a duty on funding recipients to not discriminate based on sex." *Hall*, 22 F.4th at 404 (confirming "Title IX gives recipients notice that intentional discrimination will result in liability under the statute") (citing *Franklin*, 503 U.S. at 74–75 & *Jackson*, 544 U.S. at 182).  Unlawful Title IX sex discrimination includes intentionally subjecting a person to differential, less-favorable treatment on the basis of sex, including retaliation against someone making a complaint of sexual misconduct. *Accord Jackson*, 544 U.S. at 173–74 (citing cases).  In *Hall*, the Third Circuit found recipients may be held liable under Title IX for failing to properly respond to campus sexual misconduct committed against their students by third parties, such as campus visitors.  22 F.4th, at 403–407 (affirming the recipient must have "substantial control over both the harasser and the context in which the known harassment occurs") (quoting *Davis*, 526 U.S. at 645).  Specifically, the Third Circuit considered the recipient's failure to act upon actual notice of on-campus sexual misconduct to determine it made an official decision not to remedy the same as

_____

[6] The *Gebser* Court distinguished this liability framework from the deliberate indifference liability framework first applied in *Franklin*, 503 U.S. 60, regarding teacher-on-student sexual misconduct, and then applied to student-on-student sexual misconduct in *Davis ex rel. v. Monroe County Board of Education*, 526 U.S. 629 (1999). *Accord Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1112–13 (9th Cir. 2020) (interpreting *Gebser* and *Davis* to support liability "when a school's official policy is one of deliberate indifference to sexual harassment in any context subject to the school's control"); *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170 (10th Cir. 2007); *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 879–80 (W.D. Texas 2019).

discrimination in violation of Title IX.  *See, e.g., Hall*, 22 F.4th at 411.  In this case, Defendant Rutgers cannot dispute that it intentionally misled Plaintiff Doe to wrongly believe that it lacked "jurisdiction" over her on-campus rape complaint against T.D, which is violative of Ms. Doe's Title IX rights as a matter of law.

Defendant Rutgers intentionally discriminated against Ms. Doe by falsely claiming it lacked jurisdiction over her rape complaint.  Early on March 6, 2020, T.D. raped Ms. Doe in Talbott Apartments, her campus-based residence hall.[7]  (SOF, ¶¶ 23, 80, 83.)  T.D. raped Ms. Doe after signing-in as her campus guest.  (*Id.*, ¶¶ 81, 82.)  In doing so, despite being an NJIT student, he subjected himself to Defendant Rutgers' substantial control.  (*Id.*, ¶¶ 59–62.)  *See Hall*, 22 F.4th at 408–09 (finding institutional control over residence hall guests and dismissing defendant's arguments by holding "control . . . is not a limited inquiry into [a recipient's] *formal* disciplinary authority, but a broader examination of the degree of control [the recipient] had over [the harasser] and its ability to 'take remedial action'") (emphasis in original) (citing *Davis*, 526 U.S. at 644) ("A recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action.")

---

[7] Defendant Rutgers found T.D. responsible for sexual misconduct under its appliable Title IX policies by stating in relevant part: "[D]ue to the ingestion of alcohol and prescription drugs, the Complaining Party could not consent to sexual activity during the time period in question pursuant to the standard set forth in the relevant policies discussed above" (*id.*), such that this Court should find this issue from any challenge by Defendants. *See, e.g., Todaro v. Township of Union*, 27 F.Supp.2d 517, 528 (D.N.J. 1998) (citation omitted).

Later that same day, Ms. Doe reported to a responsible employee at Defendant Rutgers, CARE Coordinator Anwaar Najmi, that an NJIT student had raped her in the Talbott Apartments. (SOF, ¶¶ 85–92.) By March 8, 2020, Ms. Doe also reported the rape to Defendant Rutgers' UPD, which identified T.D. as a regular residence hall guest on campus. (*Id.*, ¶¶ 101–103.) Defendant Rutgers had **numerous** Title IX policies and procedures establishing its jurisdiction to address such on-campus sexual misconduct committed by third parties. (*Id.*, ¶¶ 32–47.) On March 9, 2020, by and through Defendant Strother, who knew about such policies, Defendant Rutgers acknowledged Ms. Doe's campus rape report and properly advised her:

> As a Rutgers student, you have the right to file a formal complaint regarding this incident through the University's Title IX process, which includes a prompt, thorough and impartial investigation of the incident.

(*Id.*, ¶ 108.) On March 16, 2020, Ms. Doe indicated she wanted to file a Title IX complaint. (*Id.*, ¶ 125.) In explicably, Defendants responded by **falsely** claiming that Defendant Rutgers lacked "jurisdiction" over T.D.'s on-campus rape of Ms. Doe, and actively misrepresenting the scope of Title IX protections available to her:

> Please be advised that the Office of Title IX and ADA Compliance **_only has jurisdiction over Rutgers University students and/or parties affiliated with Rutgers University (Outside Vendors, Contractors, etc.)_** If the matter involves a student from another university, the information reported to my office would be shared with the Title IX Coordinator of the school the Respondent attends for whatever action they deem necessary under their respective Title IX Policy. Unfortunately, as previously communicated, **_we do not have jurisdiction over student's [sic] at other_**

***institutions***; therefore, the Respondent's affiliated institution's policies and/or procedures related to Title IX would be applicable.[8]

(SOF, ¶ 126.) On March 17, 2020, Ms. Doe confirmed her complaint while acknowledging Defendants' misrepresentation and without waiving her rights:

> I would like to take the next steps in filing a report. The other person involved is not a student at Rutgers, *so I understand the variability that comes along with that.*

(*Id.*, ¶ 128 (emphasis added).) Thereafter, despite it not having any agreement in place with the NJIT to handle such complaints, Defendants referred out Ms. Doe's rape complaint without initiating its own process. (SOF, ¶¶ 12, 135.) In doing so, Defendant Rutgers failed to initiate its grievance process by, among other things, sending an investigation notice to the parties, sending Ms. Doe information about her rights, and contacting witnesses. (*Id.*, ¶¶ 135, 175, 171, 172, 199.) Under oath, Investigator Ponce admitted that Defendant Rutgers' Title IX investigation was "untimely, as in not promptly or quickly completed" that she had "a concern with regards to how long it was taking" and "was essentially shocked that it was, you know,

---

[8] This last phrase is also a misrepresentation of Title IX, which obligates, on its face, that the recipient controlling the educational environment preserve equal educational access and does not make this protection contingent upon what educational institution the offender attends: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a); *see, e.g., Hall*, 22 F.4th at 405 (finding Title IX obligations to address on–campus student harassment is "not based upon the classification of the harasser as a student, guest, or other type of third party") (citing *Davis*, 526 U.S. at 644–46 & *Simpson*, 500 F.3d 1170).

taking this long." (*Id.*, ¶¶ 158, 196, 200, 201.) Specifically, Defendants did not address

Ms. Doe's campus rape complaint until her counsel demanded action in July 2020—

*four months* after her rape report. (*Id.*, ¶¶ 146, 149, 150, 156.)

In *Hall*, the Third Circuit found that Millersville University had adopted Title

IX policies and procedures governing when nonstudents commit sexual misconduct on

its campus against its students. 22 F.4th, at 405–06. It also found that the OCR had

first issued Title IX guidance in 1997 requiring recipients to address sexual misconduct

committed by third parties. *Id*. at 406 (citing the same). The OCR had also issued an

updated Title IX guidance on point in 2001. (SOF, ¶ 29.) The Third Circuit affirmed

that, for campus visitors, Millersville University could be held liable under Title IX

because it had "substantial control over both the harasser and the context in which the

known harassment occurs." *Id*, at 403–07 (quoting *Davis*, 526 U.S. at 645). Likewise,

Defendant Rutgers has several Title IX policies and procedures addressing on-campus

sexual misconduct committed against its students by third parties. (SOF, ¶¶ 32–47.)

During its deposition, Defendant Rutgers admitted these policies cover NJIT students,

like T.D. (*Id*., ¶ 51.) Defendant Rutgers also had substantial control over T.D. when

he signed into Ms. Doe's residence hall, which is where he raped her on March 6, 2020.

(SOF, ¶¶ 59–62, 82.) As such, this Court should find that Defendant Rutgers—*at all

times*—had jurisdiction over Ms. Doe's campus rape complaint against T.D. (SOF, ¶¶

1, 2, 28, 32–47.) Indeed, Defendant Rutgers admitted its authority to take remedial

action against T.D. (*id*., ¶¶ 32–52,105), which it ultimately did ***440 days after*** Ms. Doe's rape report (*id*., ¶ 211). *See Hall*, 22 F.4th, at 409 (considering a recipient's ability to take remedial action to establish substantial control under Title IX) (citing *Davis*, 526 U.S. at 644).

This Court should find there is no genuine dispute of material fact regarding Defendant Rutgers discriminating against Ms. Doe by actively misleading her regarding its Title IX jurisdiction to handle third party sexual misconduct complaints and to take remedial action regarding the same, such that Ms. Doe is entitled to summary judgment as a matter of law on Count II (Title IX Sex Discrimination).

## II.    <u>Count I</u>: Title IX Deliberate Indifference

Ms. Doe is entitled to summary judgment on her Count I because Defendant Rutgers undisputedly failed to investigate Ms. Doe's campus rape complaint for months, and then prolonged and delayed the outcome to effectively push her off campus. To prevail on this Title IX Deliberate Indifference claim, Ms. Doe must show (1) Defendant Rutgers receives federal funding; (2) she suffered sexual harassment; (3) Defendant Rutgers "exercised substantial control over the harasser and the context in which the harassment occurred," (4) Defendant Rutgers had actual notice of the harassment, (5) Defendant Rutgers responded to this actual notice with deliberate indifference; and (6)(i) "the harassment was so severe, pervasive, and objectively offensive" that it (ii) deprived Ms. Doe of equal educational access. *See Hall*, 22 F.4th

at 408 (citing *Davis*, 526 U.S. at 645–50). The parties agree on elements (1), (2), and (6)(i). (SOF, ¶ 3, 63, 64). Below, Ms. Doe addresses elements (4), (3), (5), and (6)(ii).

**A. Defendant Rutgers had actual notice of Ms. Doe's on-campus rape**

Defendant Strother had actual notice that Ms. Doe suffered a campus rape. "To establish liability for deliberate indifference under Title IX, a plaintiff must show that an 'appropriate person' had actual notice of harassment." *Hall*, 22 F.4th, at 410 ("An appropriate person is 'at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination'") (quoting *Gebser*, 524 U.S. at 290). A single incident of rape is sufficiently severe, pervasive, and objectively offense sexual harassment to trigger Title IX liability. *Hall*, 22 F.4th, at 407 ("[A] funding recipient's failure to respond after learning of a single incident of sexual assault can 'subject' a student to discrimination in violation of Title IX's plain terms") (citing *Doe v. Fairfax Cty. Sch. Bd.*, 10 F.4th 406, 410–12 (4th Cir. 2021) (Wynn, J., concurring)); *M.D.B. v. Punxsutawney Christian Sch.*, 386 F.Supp.3d 565, 579 (W.D. Penn. 2019) ("Repeated incidents are not required to plead a hostile environment, however, because a single incident can give rise to Title IX liability") (citing cases). On March 9, 2020, Defendant Rutgers' Title IX Coordinator, Defendant Strother—who admitted that he is an appropriate official for purpose of Title IX—acknowledged Ms. Doe's campus rape report. (SOF, ¶¶ 13, 108.) Prior to that, on March 8, 2020, Defendant Rutgers' UPD sent notice of Ms. Doe's on-campus rape to several officials. (*Id.*, ¶ 102.) Prior

to that, on March 6, 2020, Ms. Doe reported the campus rape to Coordinator Najmi, who was a responsible employee required to immediately alert the Title IX Office, which she delayed until March 9, 2020. (*Id*., ¶¶ 86, 88.) The bottom line is that Defendant Rutgers cannot dispute that it had actual notice of the campus rape at least by March 9, 2020, satisfying element (4) of the Title IX Deliberate Indifference claim.

### B. Defendant Rutgers exercised substantial control over T.D. in Talbott Apartments

As a registered guest in Talbott Apartments, Defendant Rutgers had substantial control over T.D. during the rape on March 6, 2020. A recipient may be held liable for Title IX deliberate indifference towards the on-campus rape of its student by a campus guest when it has "substantial control over both the harasser and the context in which the known harassment occurs." *See Hall*, 22 F.4th, at 403–07 (quoting *Davis*, 526 U.S. at 645). In *Hall*, the Third Circuit found defendant's substantial control over residence hall guests based on guest policies governing the residence hall, the ability to remove guests, and the ability to ban individuals. 22 F.4th at 408–09. The Third Circuit rejected arguments that defendant needed "formal disciplinary authority" over campus guests to establish control. *See id*. (requiring a "broader examination of the degree of control" based on the recipient's ability to "take remedial action.") (citing *Davis*, 526 U.S. at 644). Likewise, in this case, Defendant Rutgers controls Talbott Apartments, which is a secure, on-campus residence hall requiring guests to sign in, among other governing security policies and procedures. (SOF, ¶¶ 59–62.) On March 6, 2020,

T.D. registered as Ms. Doe's guest at Talbott Apartments, which is where he then raped her while she was too incapacitated to consent. (*Id.*, ¶¶ 81–83.) Thereafter, at all times, Defendant Rutgers had authority to ban T.D. from residence halls and campus, and indeed eventually did so. (*Id.*, ¶¶ 32–52.) There is no material dispute of genuine fact regarding Defendant Rutgers's substantial control over T.D. in Talbott Apartments on March 6, 2020, to satisfy element (3) of Count I.

### C. Defendant Rutgers demonstrated deliberate indifference

Defendant Rutgers responded to Ms. Doe's notice of an on-campus rape in a clearly unreasonable manner. As recounted by the Third Circuit, recipients only avoid Title IX liability by responding to campus sexual misconduct in a manner that is not "clearly unreasonable." *See, e.g., Hall*, 22 F.4th at 410 (citing *Davis*, 526 U.S. 649); *see also Fem. Maj. Found. v. Hurley*, 911 F.3d 674, 689–91 (4th Cir. 2018) (finding deliberate indifference when a recipient was "not entirely unresponsive" but still not "engag[ing] in efforts that were 'reasonably calculated'" to remedy the hostile environment). "[A] court looks at both whether a school's response was reasonably calculated to prevent the reoccurrence of the harassment *and* also at the school's efforts to ensure the survivor's continued access to education in the wake of the reported abuse." *Doe v. N. Penn. Sch. Dist.*, 636 F.Supp.3d 519, 529 (E.D. Penn. 2022) (emphasis added) (citing cases). Nothing precludes this Court from granting summary judgment to Ms. Doe by finding Defendant Rutgers' response to be "clearly

unreasonable as a matter of law." *Davis*, 526 U.S. 649 (internal quotations omitted). Below, Ms. Doe identifies *at least six ways* Defendant Rutgers demonstrated deliberate indifference towards T.D.'s on-campus rape by leaving her in a hostile educational environment without sufficient remedies.

### 1. Defendant Rutgers obstructed Ms. Doe's ability to get help

In the aftermath of the campus rape, Defendant Rutgers' CARE Team and Violence Prevention and Victim Assistance (VPVA) Office obstructed Ms. Doe's ability to obtain help under Title IX. On March 6, 2020, CARE Coordinator Najmi—a responsible employee obligated to immediately pass Ms. Doe's complaint to Defendant Rutgers' Title IX Office—failed to do so for ***three days***. (SOF, ¶¶ 65–68.) *See, e.g., Hall*, 22 F.4th at 411 (considering a recipient's deliberate indifference to include a Title IX report not being directed to the Title IX Coordinator). Coordinator Najmi had led Ms. Doe to believe that she would disclose the on-campus rape to the Title IX office, but she ***intentionally withheld*** the nonconsensual nature of the sexual incident when doing so days later. (SOF, ¶¶ 90, 91.) Specifically, VPVA Director Christie Howley testified that Coordinator Najmi disclosed that Ms. Doe had reported a sexual assault (*id*., ¶ 93), and Coordinator Najmi admitted under oath that she should have reported the non-consensual nature of the incident to the Title IX Office, as well as Ms. Doe's emotional reaction (*id*, ¶ 91). Coordinator Najmi even excluded the rape report in her CARE team notes. (*Id*.)

Coordinator Najmi's job was to connect students with resources, but she did ***not*** inform Ms. Doe about available safety measures and accommodations through the Title IX Office. (SOF, ¶ 87–92.) Without a formal report, Ms. Doe could not access most of Defendant Rutgers' safety measures. (*Id.*, ¶ 97.) Despite her entitlement to housing accommodations, which is one of only two safety measures available upon a confidential report to the VPVA, Director Howley failed to inform Ms. Doe about this option. (*Id.*, ¶ 96.) As a direct result, Ms. Doe was left to stay at Talbott Apartments, where T.D. had raped her and could stay across the street in his fraternity. (*Id.*, ¶ 100.) Given her fear, Ms. Doe chose never to return to Talbott Apartments again, even leaving early for spring break and deciding against returning to campus during the COVID-19 pandemic shutdown as originally planned. (*Id.*, ¶ 100.) Director Howley also admitted that she did not inform Ms. Doe about her option to seek a no-contact order, campus ban, or escort from Defendant Rutgers or even a civil restraining order. (*Id.*, ¶¶ 96.) Instead, Director Howley only shared general information about Title IX and criminal reporting, but never asked Ms. Doe if she wanted her VPVA report disclosed to the Title IX Office, knowing this would allow her to seek safety measures and academic accommodations. (SOF, ¶ 97.) Finally, Director Howley made Ms. Doe sign a "confidentiality agreement," which led Ms. Doe to wrongly believe that she could not disclose the incident to get support from her parents or employer. (SOF, ¶¶ 98.) By and through such means, Defendant Rutgers demonstrated deliberate

indifference towards Ms. Doe's rape and the resulting hostile environment, leaving her without the ability to seek related remedies.

### 2. *Defendant Rutgers demonstrated indifference to Ms. Doe's safety*

T.D. created a hostile environment on Defendant Rutgers' Newark campus by raping Ms. Doe. While T.D. was an NJIT, Ms. Doe was a student at Defendant Rutgers. (SOF, ¶¶ 19, 25.) As such, Defendant Rutgers owed her a duty of safety while on campus. (*Id*., ¶¶ 28–47, 105.) In fact, it had advertised this duty to attract students like Ms. Doe to its campus. (*Id*., ¶ 18.) To fulfill this duty, Defendant Rutgers had "inherent authority" over campus to ban individual from accessing it. (*Id*., ¶¶ 34, 48–52). Defendant Rutgers advertised bans as remedial measures in its Title IX policies, even though it had no written information or even training on when to issue them, resulting in their inconsistent application to protect victims. (*Id*., ¶¶ .) As admitted by Defendant Rutgers: "So simply put, yes, the []UPD could have [issued a ban]" after Ms. Doe reported the campus rape. (*Id*., ¶¶ 56, 57, 105.) Defendant Rutgers demonstrated its deliberate indifference towards Ms. Doe's equal access to education on its Newark camps by refusing to consider the following safety concerns:

- T.D.'s fraternity house was directly across from the Talbott Apartments, where the rape occurred. (SOF, ¶¶ 79, 80–83, 100.)

- As an NJIT student, T.D. regularly came on Defendant Rutgers' Newark campus to get food, visit a friend, and access campus buildings. (*Id*., ¶ 27.)

- T.D. could cross-enroll in courses due to the consortium between Defendant Rutgers and the NJIT. (*Id*., ¶ 8, 26.)

- On March 8, 2020, Defendant Rutgers' UPD learned that T.D. frequently visited Talbott Apartments. (*Id.*, ¶¶ 101, 102.)

- The UPD knew T.D. had twice messaged Ms. Doe via Snapchat after the rape. (*Id.*, ¶ 107.) T.D. even came up on a geolocation-based app for Ms. Doe. (*Id.*, ¶ 124.)

- On March 9, 2020, Defendant Rutgers had only issued a temporary residence hall ban against T.D. for 24–to–48 hours without telling either Ms. Doe or T.D. (*Id.*, ¶¶ 115, 116.)

- From Spring to Fall 2020, Ms. Doe requested a safety plan and contributed to planning one while Defendant Rutgers never finalized one. (*Id.*, ¶¶ 63, 151, 163, 165, 166.)

- Law enforcement did not serve Ms. Doe's temporary civil restraining order on T.D. for 147 days, leaving her unprotected. (*Id.*, ¶¶ 184, 207.)

- During the COVID-19 pandemic, Ms. Doe could not easily identify whether he was on campus or nearby, causing her constant fear for her safety. (*Id.*, ¶ 218.)

Despite these undisputed circumstances, Defendant Rutgers never issued ***any*** safety measures to remedy the hostile environment. (*Id.*, ¶¶ 112, 166, 168.)

Without such measures, Ms. Doe did not return to Talbott Apartments, and instead stayed with friends for ***five days*** before leaving for spring break and ***never returning*** again to Talbott Apartments. (*Id.*, ¶ 100.) She then moved off-campus at personal expense to ensure her security since Defendant Rutgers only offered her residence hall safety measures after she secured other housing. (*Id.*, ¶¶ 143, 152.) Ms. Doe eventually transferred out-of-state to a university willing to provide her safety measures. (*Id.*, ¶¶ 215, 222–224.) *See N. Penn. Sch. Dist.*, 636 F.Supp.3d at 529

("Where a school's response is clearly insufficient to ensure a victim can safely continue her education, or to ameliorate any post–assault hostile environment, it may constitute deliberate indifference.").

### 3. *Defendant Rutgers needlessly delayed Ms. Doe's complaint*

Defendant Rutgers engaged in several efforts to delay Ms. Doe's rape complaint. First, Coordinator Najmi did not tell Ms. Doe about her option to report to the Title IX Office, and implied she would promptly file such a report as a mandatory reporter (though this did not occur). (SOF, ¶¶ 87, 89–92.) Second, after discussing the campus rape, VPVA Director Howley made Ms. Doe sign a confidentiality agreement, leaving Ms. Doe with the belief that she could not discuss the incident with others, like her parents or employer. (*Id*., ¶ 98.) Third, Defendant Strother informed Ms. Doe that she could make a Title IX complaint but did not state that this could be done immediately by phone or in writing. (*Id*., ¶ 129.) Instead, Defendants tried to dissuade her complaint by claiming a lack of "jurisdiction" over T.D.'s on-campus rape. *See supra*, Part I. Undeterred, Ms. Doe wanted to file a complaint and Defendant Strother scheduled a time when she was back on campus, despite there being a two-week COVID-19 closure. (*Id*., ¶¶ 118, 128, 129.) Again, Defendant Strother failed to inform Ms. Doe that she could promptly make the report by phone or in writing, despite him eventually taking her complaint by phone on March 30, 2020. (*Id*., ¶ 122.) This approach conflicts with Defendant Rutgers' Policy 10.3.12, which states in relevant

part: "Following receipt of notice of a potential violation of this Policy, the Title IX Coordinator will ***immediately*** gather as much information as possible to determine the appropriate means for addressing the report." (*Id.*, ¶¶ 32, 193.) Through such tactics, Defendant Rutgers delayed Ms. Doe's complaint almost a full month. (*Id.*, ¶¶ 129, 135.) Defendant Rutgers' systemic efforts to delay and impede Ms. Doe's campus rape complaint demonstrate its deliberate indifference in violation of Title IX.

### 4. Defendant Rutgers wrongfully deferred the complaint to the NJIT

Counter to Title IX, Defendant Rutgers deferred Ms. Doe's complaint to the NJIT. Title IX obligates Defendant Rutgers to provide its students with a "prompt and equitable" grievance process addressing campus sexual misconduct. (SOF, ¶ 28.) It is undisputed that Defendant Rutgers had Title IX policies and procedures to address sexual misconduct by third parties on its campus, including misconduct committed by NJIT students. (*Id.*, ¶¶ 32–47.) Notably, Defendant Rutgers's consortium did not set up any Title IX referral relationship with the NJIT, nor did it cover campus safety in general anymore. (*Id.*, ¶¶ 10–12.) Despite this, quite inexplicably, Defendant Strother demonstrated deliberate indifference by misleading Ms. Doe to belief the NJIT, not Defendant Rutgers, had jurisdiction over T.D.'s on-campus rape. (*Id.*, ¶¶ 28–48, 108.) After taking Ms. Doe's formal complaint, Defendant Strother deferred it fully to the NJIT rather than promptly initiating any investigation on behalf of Defendant Rutgers or properly referring the same to the OEE. (*Id.*, ¶¶ 135, 137.) *See, e.g., Hall*, 22 F.4th

397, 411 (finding a failure of the recipient to remedy a report of harassment an official decision to be deliberately indifferent). Notably, and importantly, NJIT did not have any Title IX jurisdiction over Ms. Doe's complaint.[9] (*Id.*, ¶ 148.) Defendants' deference of Ms. Doe's complaint to the NJIT is deliberate indifference as it sought only to avoid its own responsibilities under Title IX to remedy the hostile environment.

### 5. *Defendant Rutgers delayed its investigation until July 2020*

Defendant Rutgers repeatedly delayed its investigation of Ms. Doe's campus rape complaint counter to Title IX. Under oath, Defendant Strother admitted that he did not begin Ms. Doe's investigation after taking her complaint, and Investigator Ponce admitted she did not send any formal notice of investigation. (SOF, ¶¶ 135, 136.) Defendants reported asked Investigator Ponce to begin her investigation in the summer of 2020, and emails show Defendant Strother and Investigator Ponce emailing about this case in July 2020. (*Id.*, ¶ 156.) This is notably because it is after Ms. Doe's counsel demanded that Defendants respond to her complaint in compliance with Title IX. (*Id.*, ¶¶ 147, 149, 150.) Despite talking about the investigation in July 2020, Defendant Strother again delayed the investigation in August 2020, claiming he had to "wait" for T.D. to offer an interview. (*Id.*, ¶ 169.) This does not comport with any of Defendant Rutgers' Title IX policy or procedure. (*Id.*, ¶¶ 32–48.) Thankfully T.D. provided a written statement in August 2020 (*id.*, ¶ 171), but Investigator Ponce did

---

[9] *See supra*, n. 3.

not have documentation about Ms. Doe's complaint until September 2020 to cause further delays (*id.*, ¶¶ 156, 179). Notably, Defendant Strother had no authority to handle third party complaints for Defendant Rutgers and should have promptly referred this matter to the Office of Employment Equity (OEE) Director Lisa Grosskreutz. (*Id.*, ¶¶ 127, 193.) Thereafter, it is undisputed that Investigator Ponce missed several days of work due to severe medical issues, while Defendants did not assign anyone else to investigate, as she was the only full-time investigator. (SOF, ¶ 159.) Defendants did not follow their policies to provide good cause notice for such delays and, instead, they repeatedly ignored Ms. Doe's counsel seeking updates. (*Id.*, ¶¶ 182, 183, 188, 192, 196, 197.) Finally, Investigator Ponce did not interview any witnesses until January 2021—***eleven months*** after Ms. Doe's report and did not locate and speak to all identifiable and relevant witnesses. (*Id.*, ¶¶ 171, 172, 199.) In short, through its unreasonable investigatory delays, Defendant Rutgers demonstrated deliberate indifference towards Ms. Doe's rape.

### 6. *Defendant Rutgers withheld T.D.'s appeal and delayed that process*

Defendant Rutgers did not provide a prompt or equitable appeal process. Through Title IX its policies Defendant Rutgers is required to provide student like Ms. Doe a "prompt and equitable" grievance process for sexual misconduct complaints. (SOF, ¶¶ 28–42.) On December 7, 2020, Defendants promised a Title IX determination in the "next few days," then delayed into February 2020 without providing Ms. Doe's

counsel any updates when requested.  (*Id*., ¶¶ 191, 192, 197, 203.)  Two days after Ms.

Doe filed a Title IX complaint with the OCR, Defendant Rutgers issued a

determination.  (*Id*., ¶¶ 202, 203.)  On March 1, 2020, T.D. appealed and Defendant

Rutgers granted him an ***unrequested*** extension while ***encouraging*** him to supplement

his appeal, despite there being no indication from T.D. that he wanted to do so.  (*Id*., ¶

205.)  Defendant Rutgers also refused to provide a copy of the appeal so that Ms. Doe

could respond.  (*Id*.)  By and through this inequitable appeal process, Defendant

Rutgers demonstrated its deliberate indifference towards Ms. Doe's Title IX rights.

### D. Ms. Doe suffered denied educational access

Defendant Rutgers' failure to remedy the hostile environment effectively denied

Ms. Doe educational opportunities and benefits.  Counter to its inherent authority and

duty to keep Ms. Doe safe, Defendant Rutgers continued to allow T.D. access to its

campus.  (SOF, ¶¶ 25–48, 116.)  In the five days following the campus rape, Ms. Doe

stayed away from the Talbott Apartments before leaving early for spring break early

to avoid campus.  (SOF, ¶ 100.)  Ms. Doe wanted to return to campus but did not hear

back on her requested housing accommodations during the COVID-19 pandemic, so

stayed home with family.  (*Id*., ¶ 100.)  For the 2020–2021 school year, at personal

expense, Ms. Doe moved off-campus to ensure T.D. no longer knew where she lived

to enjoy a more secure location.  (*Id*., ¶ 143.)  Ms. Doe signed her lease before

Defendant Rutgers had not communicated her options to seek a permanent residence hall ban against T.D. (*Id.*, ¶¶ 143, 152.)

Despite living off campus, Ms. Doe continued to use Defendant Rutgers' Newark campus, and suffered constant fear that T.D. could be nearby, wearing a mask to conceal his identity during the COVID-19 pandemic. (SOF, ¶¶ 170, 198, 218.) This hostile environment execrated her pre-existing seizure condition, such that she suffered increased seizures and she obtain a service dog for support. (*Id.*, ¶¶ 22, 24, 139, 154, 219.) Under these conditions, Ms. Doe struggled to maintain her grades and had to drop courses to ensure her academic success. (*Id.*, ¶¶ 122, 134, 140, 141.) Defendant Rutgers did not offer her academic accommodation, despite Ms. Doe regularly reaching out to the CARE team for support. (*Id.*, ¶¶ 117, 121, 131, 134, 139. 142, 144, 154.) Due to the ongoing hostile environment, Ms. Doe transferred universities into a safer environment, where she has no longer had to withdraw from any courses to maintain her grades. (*Id.*, ¶¶ 221–224.) Ms. Doe has lost advance placement credits with this transfer and has had to take summer courses to keep her originally anticipated undergraduate graduation. (*Id.*, ¶¶ 17, 223, 224.) Defendant Rutgers' deliberate indifference to the impact of the hostile campus environment on Ms. Doe, effectively drove her out of campus housing, negative impacted her grade, and led to her transfer.

**III.   Count III: Title IX Hostile Environment**

Ms. Doe is entitled to summary judgment on Count III because Defendant Rutgers undisputed denied or delayed her Title IX remedies. To recover on a Title IX Hostile Environment claim, "plaintiff must demonstrate that (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; and (4) the discrimination would have detrimentally affected a reasonable person in her position." *E.N. v. Susquehanna Tp. Sch. Dist.*, No. 1:09-cv-1727, 2011 WL 3608544, *14 (M.D. Penn. July 5, 2011) (not reported) (citations omitted); *see also Goodwin v. Pennridge Sch. Dist.*, 389 F. Supp. 3d 304, 314–15 (E.D. Penn. 2019) ("Like Title VII sexual harassment claims, Title IX hostile educational environment claims must be rooted in intentional sex discrimination.") (citation omitted). Hostile environments may be formed by "discriminatory acts that aren't individually actionable [but] may be aggregated" when "linked in a pattern of actions" regarding the same continuous unlawful practice. *Cf. Doe v. Mercy Catholic Med. Ctr.,* 850 F.3d 545, 566 (3d Cir. 2017) (citing Title VII cases); *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 205 (3d Cir. 2001) (speaking favorably of Title IX hostile environment claims borrowing from Title VII jurisprudence) (citing cases). Courts may find Title IX liability "[w]here a school's response is clearly insufficient to ensure a victim can safely continue her education, or to ameliorate any post-assault hostile environment." *N. Penn. Sch. Dist.*,

636 F.Supp.3d at 529. Defendant Rutgers repeatedly left Ms. Doe without a remedy for the hostile campus environment after the campus rape by T.D.

It is undisputed that Defendant Rutgers has "care, custody, and control" over the Newark campus and buildings. (SOF, ¶ 48.) Related, Defendant Rutgers had authority to ban T.D. from the same for safety concerns. (*Id*., ¶¶ 28–52, 54.) Without issuing such a ban, Defendant Rutgers knowing allowed T.D., an NJIT student, to continually access Defendant Rutgers' Newark campus were Ms. Doe alone had a right to access educational opportunities and benefits. (*Id*., ¶¶ 19, 20, 23, 25–27.) Indeed, Ms. Doe qualified as a student with disabilities needing ongoing services from Defendant Rutgers on its Newark campus during her enrollment. (*Id*., ¶¶ 22, 23.) Despite knowing he frequently visited Talbott Apartments, Defendant Rutgers did not immediately or permanently ban T.D. so Ms. Doe could continue residing there. (*Id*., ¶¶ 102, 103.) Indeed, Defendant Rutgers did not even consider a permanent residence hall ban until after Ms. Doe's counsel demanded remedies in July 2020—***fourth months*** after the rape report. (*Id*., ¶¶ 147, 149, 150 152.) Thereafter, Defendant Rutgers waited a month and a half to deny Ms. Doe's request for a campus ban, despite them being available to sexual assault victims upon a report. (*Id*., ¶¶ 56, 57, 149–168.) While it did issue a permanent residence hall ban, Ms. Doe no longer lived at Talbott Apartments, and there was already a "no guest" policy due to the COVID-19 pandemic. (*Id*., ¶¶ 143, 152, 198.) Regardless, Defendant Rutgers never informed T.D. of this

ban. (*Id.*, ¶ 153.) Even after Ms. Doe obtained a temporary civil protective order, which is a basis Defendant Rutgers has used to issue campus bans in the past, it refused to do so. (*Id.*, ¶¶ 57, 184.) Instead, Defendant Rutgers left Ms. Doe vulnerable and afraid on campus given the unserved temporary civil protective order for 147 days. (*Id.*, ¶¶ 184, 207.) Instead of remedying this hostile environment, Defendant Rutgers tried to intentionally keep Ms. Doe in the dark about its authority to issue safety measures at all stages of her case:

- On March 6, 2020, CARE Coordinator Najmi did not inform Ms. Doe about the right to request a campus ban or other safety measures through Title IX. (SOF, ¶ 87.)

- On March 6, 2020, VPVA Director Howley did not inform Ms. Doe about the right to request a campus ban or other safety measures through Title IX. (*Id.*, ¶ 96.)

- On March 9, 2020, Defendant Strother's initial outreach does not mention her right to receive any interim safety measures. (SOF, ¶ 108.) Defendant Strother attached an inapplicable Title IX policy that only detailed safety measures available against other Rutgers students, not unaffiliated third parties like T.D. (*Id.*.)

- From July 9, 2020, until August 17, 2020, Defendant Rutgers considered but did not provide either a campus ban or safety plan for Ms. Doe. (*Id.*, ¶¶ 152–167.)

- On May 21, 2021, Defendant Rutgers issued a ban against T.D. for raping Ms. Doe on campus. (*Id.*, ¶ 211.)

As argued above, it is indisputable that Defendant Rutgers systematically sought to discriminate against Ms. Doe by repeatedly failing to provide her any remedy for the

hostile campus environment. As argued *supra*, *see* Section II(D) Defendant Rutgers denied Ms. Doe equal access to education free from a sexually hostile environment. As such, this Court should grant Ms. Doe summary judgment on Count III.

## Conclusion

For the foregoing reasons, as supported by the SOF citations, Ms. Doe respectfully requests that this Court grant her Motion and order summary judgment be issued on her Title IX claims against Defendant Rutgers as a matter of law.

This the 12th day of June 2024.    Respectfully Submitted,

s/ Laura L. Dunn
Laura L. Dunn, Esq. (*pro hac vice*)
L.L. DUNN LAW FIRM, PLLC
1717 K Street NW, Suite 900
Washington D.C. 20006
T: 202-822-5023
F: 202-776-0136
LLD@LLDunnLaw.com

s/ Michael J. McFarland
Michael J. McFarland (N.J. Bar No. 212292016)
Gaetano D'Andrea (*pro hac vice*)
LAFFEY BUCCI KENT, P.C.
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
T: 215-399-9255
F: 215-857-0075
MMcfarland@laffeybuccikent.com
GDAndrea@laffeybuccikent.com
CVGDTeam@laffeybuccikent.com

*Counsel for Plaintiff Veronica Doe*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on all attorneys of record using e-mail on June 12, 2024, and then will be filed with the Court through its CM/ECF system on June 26, 2025, which will notify any CM/ECF participants of the same. Specifically, Plaintiff served opposing counsel:

William Maderer (wmaderer@saiber.com)
Vincent Cirilli (vcirilli@saiber.com)
SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932-2266
(973) 622-3333

*Attorneys for Defendant Rutgers,*
*The State University of New Jersey and Scott Strother*

This the 12th day of June 2024.　　Respectfully Submitted,

s/ Michael J. McFarland
Michael J. McFarland (N.J. Bar No. 212292016)
LAFFEY BUCCI KENT, P.C.
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
T: 215-399-9255
F: 215-857-0075
MMcfarland@laffeybuccikent.com
CVGDTeam@laffeybuccikent.com

*Counsel for Plaintiff Veronica Doe*