## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### NEWARK DIVISION

_____

| | |
|---|---|
| VERONICA DOE, | ) |
| | ) Civil Action No. 21-20763(ES)(MAH) |
| Plaintiff, | ) |
| | ) |
| v. | ) **BRIEF IN SUPPORT OF** |
| | ) **PLAINTIFF'S OPPOSITION TO** |
| RUTGERS UNIVERSITY, the State | ) **DEFENDANTS' MOTION FOR** |
| University of New Jersey, & SCOTT | ) **SUMMARY JUDGMENT** |
| STROTHER, in his personal and | ) |
| official capacity, | ) |
| | ) Oral Arguments Requested |
| | ) Motion Day: June 17, 2024 |
| Defendants. | ) |

_____

Laura L. Dunn, Esq. (*pro hac vice*)
L.L. DUNN LAW FIRM, PLLC
1717 K Street NW, Suite 900
Washington D.C. 20006
T: 202-822-5023
F: 202-776-0136
LLD@LLDunnLaw.com

Michael J. McFarland (N.J. Bar No. 212292016)
Gaetano D'Andrea (*pro hac vice*)
LAFFEY BUCCI KENT, P.C.
1100 Ludlow Street, Suite 300
Philadelphia, PA  19107
T: 215-399-9255
F: 215-857-0075
MMcfarland@laffeybuccikent.com
GDAndrea@laffeybuccikent.com
CVGDTeam@laffeybuccikent.com

*Counsel for Plaintiff Veronica Doe*

## TABLE OF CONTENTS

**Cover Page** ................................................................................................ i

**Table of Contents** ..................................................................................... ii

**Table of Authorities** .............................................................................. iv

**Brief in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment** ............................................................................................ 1

**Preliminary Statement** .......................................................................... 1

**Standard of Review** ............................................................................... 3

**Arguments** ............................................................................................. 3

   I.  <u>Point I</u>: Ms. Doe Proved Her Title IX Claims (Counts I-III) ...................... 3

     A. Defendant Rutgers Acted with Deliberate Indifference .................... 4

       1. Cited Third Circuit Title IX Cases................................................ 5

       2. Cited Title IX Cases Outside the Third Circuit ........................... 7

     B. Defendants Conceded Dulian's On-Campus of Ms. Doe is Actionable Title IX Harassment, as already ..................................... 11

     C. Ms. Doe Suffered Educational and Other Harms ........................... 12

  II. <u>Point II</u>: Genuine Issues of Material Fact as to Ms. Doe's Negligence Claim (Count IV) ............................................................................................... 15

     A. The Charitable Immunity Act does not Bar Plaintiff's Negligence Claim ................................................................................................ 15

     B. Defendants Owed Plaintiff a Duty of Care and Breached that Duty .... 20

     C. Plaintiff's Notice of Claim was Timely; Alternatively, Defendants Waived Their Ability to Contest the Timeliness of Plaintiff's Notice

of Claim ................................................ 23

III. <u>Point III</u>: Defendants' Attempt to Preclude Ms. Does' Expert in Their Motion is Procedurally Improper and Should be Disregarded Entirely .... 25

IV. <u>Point III</u>: Ms. Doe's Entitlement to Damages ............................................ 27

 A. Available Title IX Damage Claims Post-*Cummings* ....................... 27

 B. Ms. Doe's Permanent Injury Meets the N.J.S.A. § 59:9-2(d)Threshold ................................................ 36

**Conclusion** ................................................ 40

**Certificate of Service** ................................................ 42

# TABLE OF AUTHORITIES

## <u>Cases</u>

*A.T. v. Oley Valley School District*, Civil Action No. 17–4983,
2023 WL 1453143 (E.D. Penn. Feb. 1, 2023) ...................................................Brief 33

*Barnes v. Gorman*, 536 U.S. 181 (2002) ............................................................Brief 28

*Bell v. Hood*, 327 U.S. 678 (1946) ...............................................................Brief 29, 30

*Bush v. Lucas*, 462 U.S. 367 (1983) ..................................................................Brief 31

*Butters v. James Madison University*, 208 F. Supp. 3d 745
(W.D. Va. 2016) .................................................................................................Brief 9

*Cannon v. University of Chicago*, 441 U.S. 677 .............................Brief 3, 28, 32, 33

*Carabello v. New York City Department of Education*,
928 F. Supp. 2d 627 (E.D.N.Y. 2013) .........................................................Brief 11, 14

*Celotex Corporation v. Catrett*, 477 U.S. 317 (1986) ..................SOF Passim; Brief 3

*Colavecchia v. South Side Area Schoo. District,* 2023 WL 3043777
(W.D. Pa. Apr. 21, 2023).....................................................................................Brief 6

*Collins v. Union County Jail*, 150 N.J. 407 (1997) ...............................Brief 37–38, 40

*Crawford v. Davis*, 109 F.3d 1281 (8th Cir. 1997) ..........................................Brief 35

*Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212 (2022)............ Brief Passim

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .............Brief 25

*Davis ex rel. LaShonda D. v. Monroe County Board of Education*,
526 U.S. 629 (1999) ..................................................................................... Brief Passim

*Davis v. Passman*, 442 U.S. 228 (1979) ...........................................................Brief 29

*Deckert v. Independent Shares Corporation*, 311 U.S. 282 (1940) .................Brief 30

*Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) ..........Brief 34

*Doe 1, et al. v. The Curators of the University of Missouri*,
2022 WL 3366765 (W.D. Mo. August 15, 2022)..............................................Brief 35

*Doe v. Princeton University*, 790 Fed. Appx. 379 (3d Cir. 2015)...................Brief 5–6

*Doherty v. Emerson College*, 2017 WL 4364406 (D. Mass. Sept. 29, 2017) ...............
...................................................................................................................Brief 7–8

*Doe v. Trustees of Columbia University in the City of New York*,
21-Civ.-5839, 2022 WL 3666997 (S.D.N.Y. Aug. 25, 2022) ...................... Brief 8–9

*Dooley v. United States*, 182 U.S. 222 (1901)...................................................Brief 30

*E.C. by D.C. v. Inglima-Donaldson*, 470 N.J. super. 41 (App. Div. 2021)...................
...................................................................................................................Brief 16

*Elcock v. Kmart Corporation*, 233 F.3d 734 (3d Cir. 2000) ............................Brief 25

*Estate of Narleski v. Gomes*, 244 N.J. 199 (2020)...........................................Brief 21

*Fachetti v. Bridgewater College*, 175 F. Supp. 3d 627 (W.D. Va. 2016) .........Brief 10

*Farmer v. Kansas State University*, 918 F.3d 1094 (10th Cir. 2019)...............Brief 12

*Feminist Majority Foundation v. Hurley*, 911 F.3d 674 (4th Cir. 2018)............Brief 4

*Foldi v. Jeffries*, 93 N.J. 533 (1983) ................................................................Brief 17

*Franco v. Fairleigh Dickinson University*, 467 N.J. Super. 8
(App. Div. 2021)................................................................................................Brief 17

*Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992)............ Brief Passim

*Franks v. Kentucky School for the Deaf*, 142 F.3d 360 (6th Cir. 1998)............Brief 35

*Gebser v. Lago Vista Independent School District*,
524 U.S. 274 (1998) ...............................................................................Brief 5, 34, 35

*G.S. v. Department of Human Services*, 157 N.J. 161 (1999) ..........................Brief 17

*Grove City College v. Bell*, 465 U.S. 555 (1984) ...............................................Brief 32

*Hall v. Millersville University*, 22 F.4th 397 (3d Cir. 2022) .........................Brief 4, 28

*Handley v. Rowan University,* Civil No. 21–16889, 2022 WL 4115730
(D.N.J. Sept. 9, 2022) .......................................................................................Brief 6

*Hayut v. State University of New York*, 352 F.3d 733 (2d Cir. 2003) .................Brief 5

*J.I. Case Company v. Borak*, 377 U.S. 426 (1964) ...............................Brief 30, 31, 33

*J.S. v. R.T.H.*, 155 N.J. 330, (1998) ..................................................................Brief 21

*Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005) ..............Brief 4, 28

*Kain v. Gloucester City*, 436 N.J. Super. 466 (App. Div. 2014) .......................Brief 16

*Karasek v. Regents of the University of California*, 956 F.3d 1092
(9th Cir. 2020) .................................................................................................Brief 11

*Kegerise v. Susquehanna Township School District*, 321 F.R.D. 121
(M.D. Pa. 2016) ...............................................................................................Brief 24

*Kelly v. Gwinnell*, 96 N.J. 538 (1984) ...............................................................Brief 21

*Kendall v. U.S. ex rel. Stokes*, 37 U.S. 524 (1838) ............................................Brief 30

*Kimble v. Marvel Entertainment, LLC*, 576 U.S. .......................................Brief 33–34

*Kollaritsch v. Michigan State University Board of Trustees*,
944 F.3d 613 (6th Cir. 2019) ...........................................................................Brief 11

*Marbury v. Madison*, 5 U.S. 137 (1803) .....................................................Brief 29, 30

*Marshall v. Klebanov*, 378 N.J. Super. 371 (App. Div. 2005) ..........................Brief 21

*Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985) .....Brief 32

*McAvoy v. Dickinson College*, 1:20-cv-1327, 2023 WL 6276670,
(M.D. Pa. Sep. 26, 2023) ......................................................................... Brief 7

*McLaughlin v. Rova Farms, Inc.*, 56 N.J. 288 (1970) ......................................... Brief 17

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
456 U.S. 353 (1982) .............................................................................. Brief 31

*Milwaukee v. Illinois*, 451 U.S. 304 ......................................................... Brief 32

*Moretz v. Trustees of Princeton*, Civil Action No. 21–19822,
2023 WL 9017155 (D.N.J. Dec 29, 2023) ................................................ Brief 21 – 22

*National Railroad Passenger Corporation v. Morgan*,
536 U.S. 101 (2002) .............................................................................. Brief 23

*Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721 (2003) ....... Brief 35

*O'Connor v. City of Newark*, 440 F.3d 125 (3d Cir. 2006) ........................ Brief 23–24

*Oden v. North Marianas College*, 440 F.3d 1085 (9th Cir. 2006) ................. Brief 11

*Polzo v. County of Essex*, 196 N.J. 569 (2008) ....................................... Brief 21

*Potomac Aviation, LLC v. Port Authority of New York & New Jersey*,
413 N.J. Super. 212 (App. Div. 2010) ...................................................... Brief 21

*Reale v. Wayne Township*, 132 N.J. Super. 100, 332 A.2d 236
(N.J. Super. Ct. Law Div. 1975) ............................................................. Brief 37

*Sanzari v. Rosenfeld*, 34 N.J. 128 (1961) ............................................. Brief 21

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396 (3d Cir. 2003) ...............
.......................................................................................................... Brief 25

*Shank v. Carleton College*, 16-CV-1154, 232 F. Supp. 3d 1100
(D. Minn. Aug. 22, 2019), *aff'd*, 993 F.3d 567 (8th Cir. 2021) ...................... Brief 10

*Soriano ex rel. Garcia v. Board of Education of the City of New York*,
2004 WL 2397610 (E.D.N.Y. Oct. 27, 2004) ........................................... Brief 14

*Steinberg v. Sahara Sam's Oasis, LLC*, 226 N.J. 344 (2016) ..........................Brief 17

*Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969) ..................Brief 30, 31, 33

*Texas & New Orleans Railroad Co. v. Railway Clerks*,
281 U.S. 548 (1930) ..........................................................................................Brief 29

*Texas & Pacific Railroad Company v. Rigsby*, 241 U.S. 33 (1916) ................Brief 29

*Thomas v. Cumberland County*, 749 F.3d 217 (3d Cir. 2014) ......................Brief 3–4

*Townsend v. Pierre*, 221 N.J. 36 (2015) ..........................................................Brief 21

*Tubbs v. Stony Brook University*, 343 F. Supp. 3d 292 (S.D.N.Y 2018) ...........Brief 8

*United States v. Virginia*, 518 U.S. 515 (1996) ................................................Brief 35

*Williams v. Board of Regents of University System of Georgia*,
447 F.3d 1282 (11th Cir. 2007) ........................................................................Brief 13

*Williamson v. Waldman*, 150 N.J. 232 (1997) ..................................................Brief 21

*Wyandotte Transportation Company v. United States*,
389 U.S. 191 (1967) ..................................................................................Brief 31, 33

*Zeno v. Pine Plains Central School District*, 702 F.3d 655 (2d Cir. 2012).........Brief 5

## **Statutes**

20 U.S.C. § 18116  ............................................................................................Brief 33

29 U.S.C. § 794(a) .............................................................................................Brief 33

42 U.S.C. § 2000d–7 ..........................................................................................Brief 32

N.J.S.A. 2A:53A–7..........................................................................................Brief 15, 16

N.J.S.A. 2A:84A–22.13(a) .................................................................................Brief 37

N.J.S.A. 59:1–1 ........................................................................Brief 15

N.J.S.A. 59:2–1.3(a) ...............................................................Brief 16

N.J.S.A. § 59:9–2(d) ..........................................................Brief 36, 37

Pub. L. 99–506, 100 Stat. 1830 (1986) ...................................Brief 32

Pub. L. 100–259, 102 Stat. 28 (1987) .....................................Brief 32

## Rules

Fed. R. Civ. P. 8.........................................................Brief 12, 15, 24

Fed. R. Civ. P. 56.............................................SOF Passim; Brief Passim

Fed. R. Evid. 104 ...................................................... Brief 25

Fed. R. Evid. 106 ......................................................SOF 6, 20

Fed. R. Evid. 201 ......................................................SOF 15

Fed. R. Evid. 401 ...............................SOF 2, 3, 6, 14, 18, 20, 21

Fed. R. Evid. 402 ..................................SOF 2, 3, 6, 14, 18, 20

Fed. R. Evid. 403 ..........................SOF 2, 3, 6, 12, 14, 18, 20

Fed. R. Evid. 502 ......................................................SOF 16

Fed. R. Evid. 702 ......................................................Brief 25

L. Civ. R. 56.1(a) ...................................... SOF 1, 12; Brief 1

N.J.R.E. 517..............................................................Brief 37

## Other Authorities

Emily J. Martin, *Title IX and the New Spending Clause*, AM. CONST. SOC., 12 (Dec. 2012) ..........................................................................Brief 35–36

Laura L. Dunn, *Much Ado About Cummings: The Curtailment of Civil Rights Enforcement and its Impact on Title* IX, 3 Creighton. L. Rev. 56, 277–297 (2023)..................................................................................................Brief 27, 34

**BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Veronica Doe ("Ms. Doe"), by and through counsel, and pursuant to Fed. R. Civ. P. 56, hereby opposes "Defendants' Motion for Summary Judgement and to Bar the Testimony of Plaintiff's Liability Expert," stating the following in support:

## <u>PRELIMINARY STATEMENT</u>[1]

Defendant Rutgers is liable under Title IX for mishandling Tomasz Dulian's (T.D.) campus rape of Ms. Doe.  In their brief, Defendants simplify Ms. Doe's separate Title IX claims (Count I–III) to focus only on "speed" while excluding their (1) denial of her right to pursue a Title IX complaint against T.D. through Defendant Rutgers for *five months* (Pl. SOF, ¶¶ 1, 2, 13, 14, 19, 28, 29, 83, 84, 108, 108, 125–129, 135–136, 155, 156); (2) refusal to issue meaningful interim safety measures against T.D., denying her equal educational access (*id.*, ¶¶ 30, 31–52, 54, 56, 63, 64, 102–105, 108, 110–114, 146, 151–153, 161, 163–166, 168, 184, 185); (3) delay of two witness interviews for *eleven months* without contacting other witnesses (*id.*, ¶¶ 132–133, 171, 172, 199); and (4) delay of resolving her complaint for *fourteen months*, until after she

---

[1] Ms. Doe responds to "Defendants' Statement of Undisputed Material Facts" (SOF) separately in "Plaintiff's Responses to Defendants' Statement of Undisputed Material Facts Pursuant to L. Civ. R. 56.1," hereby incorporated by reference, and incorporates by reference her separately filed SOF to her Motion for Summary Judgment (MSJ) as a "supplemental statement of disputed material facts."  *Accord* L. Civ. P. 56.1(a).

filed a legal action and accepted a transfer (*id.*, ¶¶ 135–136, 155, 156, 158, 169, 174, 176, 179, 180, 182, 183, 186–197, 200–212, 215, 222–224), among other things.

Counter to these undisputable facts, Defendants claim they provided Ms. Doe "interim supportive and protective measures" (Defs.'s MSJ Brief, p. 1), listing:

- On-campus resources that failed to help Ms. Doe (*id.*, ¶¶ 30–47, 65, 67, 87, 91, 96–98, 100, 117, 119–122, 131 137–144, 154, 162, 221–224).

- Criminal case efforts *separate* from the Title IX process, involving lost and destroyed evidence, impeding prosecution. (*Id.*; Pl.'s SOF, ¶¶ 68, 227, 228.)

- A 24-to-48-hour residence hall ban issued ***three days after*** the on-campus rape (without notice to either T.D. or Ms. Doe), leaving Ms. Doe to stay elsewhere for days. (Pl.'s SOF, ¶¶ 85, 86, 89, 90, 96, 100, 101, 102, 103, 115, 116.)

- A permanent residence hall ban issued *four months after* Ms. Doe had moved off-campus, without notice of the same to T.D. (*id.*, ¶¶ 116, 142, 152, 153.)

- An "escort" offered to Ms. Doe if used a car or worked on campus, which she did not, instead of developing a safety plan for her. (*id.*, ¶¶ 151, 163–166.)

Notably, from March 2020 to 2021, Defendant Rutgers had the authority to ban T.D.––a third party with no right to access the Newark campus—but *refused to do so*, even after Ms. Doe—its student—obtained a civil restraining order. (Pl.'s SOF, ¶¶ 25–27, 33, 44, 47–49, 51, 53, 54, 56, 57, 64, 67, 77, 96, 103, 110, 168, 184, 185, 208.)

Counter to Defendants' claim (Defs.'s MSJ Brief, p. 1), Ms. Doe suffered a "loss of access to educational benefits or opportunities," including dropped courses and a school transfer resulting in lost credits and an additional semester of courses. (Pl.'s SOF, ¶¶ 17, 218–224.) Per her MSJ's SOF, Defendants did not delay the resolution of

Ms. Doe's Title IX complaint due to "extraordinary circumstances created by the [COVID-19] pandemic." Instead, their deliberate indifference started before the pandemic arose in Spring 2020 and continued throughout the Fall 2020 and Spring 2021 semesters. For such Title IX violations and negligence, Ms. Doe argues below that Defendants are liable for her lost wages, academic harm, rights violations, and ongoing physical and psychological injuries, among other things. (*Id.*, ¶¶ 216–226.)

## **STANDARD OF REVIEW**

This Court can only grant summary judgment when there is no genuine dispute of material fact, and Defendants are entitled to judgment as a matter of law by showing Ms. Doe cannot prevail at trial based on admissible evidence. *See Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (*quoting* Fed. R. Civ. P. 56(a)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## **ARGUMENTS**

### I.     **Point I**: Ms. Doe Proved Her Title IX Claims (Counts I-III)

In its brief, Defendants misidentify precedent behind Title IX's implied right of action, which is *Cannon v. University of Chicago*, 441 U.S. 677 (1979). (Defs.'s MSJ Brief, p. 4 (citing *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999)) In further error, Defendants cite Count I (Title IX Deliberate Indifference) elements as applying to Count II (Title IX Sex Discrimination) and Count III (Title IX

3

Hostile Environment), which is inaccurate as a matter of law.[2]  (*Id*., p. 4.)  Counter to Defendants' claims (Defs.'s MSJ Brief, p. 6), "deliberate indifference" is but *one form* of intentional discrimination prohibited by Title IX.  *See, e.g. Jackson v. Birmingham Bd. of Educ*., 544 U.S. 167, 173 (2005) (holding that Title IX's "private right of action encompasses intentional sex discrimination") (emphasis added) (citations omitted); *Hall v. Millersville Univ*., 22 F.4th 397, 404 (3d Cir. 2020) ("Title IX's plain language unquestionably places a duty on funding recipients to not discriminate based on sex."). Ms. Doe directly responds to Defendants' Count I arguments below, as they have not properly challenged Counts II or III in their MSJ.

### A. Defendant Rutgers Acted with Deliberate Indifference[3]

Defendants were deliberately indifferent towards T.D.'s on-campus rape of Ms. Doe.  *See Davis*, 526 U.S. 629, 648 (holding that "deliberate indifference" means a "recipient's response . . . is clearly unreasonable in light of the known circumstances" and remanding based on a delay "over a period of five months" before the district addressed peer-perpetrated sexual misconduct complaints); *see also Fem. Maj. Found. v. Hurley*, 911 F.3d 674, 689–91 (4th Cir. 2018) (finding deliberate indifference when

---

[2] Count II requires Ms. Doe to prove intentional discrimination, which she argues in her MSJ based on Defendant Strother's misrepresenting of her Title IX rights. (Pl.'s MSJ Brief, p. 9–15.) She also lists the appropriate elements and arguments for Count III (Title IX Hostile Environment) in the same motion. (*Id*., p. 28–32.)

[3] Ms. Doe hereby incorporates her Count I (Title IX deliberate indifference) MSJ arguments against Defendant Rutgers.  (Pl. MSJ Brief, p. 15–28.)

the university was "not entirely unresponsive" but did not "engage in efforts that were 'reasonably calculated'" to remedy the hostile environment) (*citing Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 669 (2d Cir. 2012)); *Hayut v. SUNY*, 352 F.3d 733, 751 (2d Cir. 2003) (citing *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 287 (1998) as finding deliberate indifference when "officials render no response" or the response "rendered amounts to . . . discrimination") (citing cases). Specifically, they (1) denied her right to immediately pursue a Title IX complaint against T.D., delaying their investigation for *five months* (Pl. SOF, ¶¶ 1, 2, 13, 14, 19, 28, 29, 83, 84, 108, 108, 125–129, 135–136, 155, 156); (2) refused to issue meaningful safety measures available against T.D., denying her equal educational access (*id.*, ¶¶ 30, 31–52, 54, 56, 63, 64, 102–105, 108, 110–114, 146, 151–153, 161, 163–166, 168, 184, 185); (3) delayed two witness interviews for *eleven months* without contacting other witnesses (*id.*, ¶¶ 132–133, 171, 172, 199); and (4) delayed the resolution her Title IX complaint for *fourteen months* (*id.*, ¶¶ 135–136, 155, 156, 158, 169, 174, 176, 179, 180, 182, 183, 186–197, 200–212, 215, 222–224).   Ms. Doe further contrasts Defendants' case law citations to the facts of this case below, showing that summary judgment is precluded as a matter of law.

### 1. *Cited Third Circuit Title IX Cases*

Defendants cite *Doe v. Princeton University* as holding that "procedural errors" during a Title IX investigation are not "clearly unreasonable" (Defs.'s MSJ Brief, p.

5), which is a gross overgeneralization of a fact-specific finding.  790 Fed. Appx. 379, 383–85 (3d Cir. 2015).  In that case, the plaintiff pled no delays, only *minor* procedural concerns of (1) the accused being interviewed twice and him once, (2) the University interviewing some but not all witnesses, (3) questions about his sexual history, and (4) the accused submitting new evidence before a Title IX hearing.  *Princeton Univ.*, 790 Fed. Appx. at 382–85.  For these minor allegations, which are not comparable to this case, the Third Circuit understandably declined to find a "clearly unreasonable" process when taken as a whole.  *Id*. at 384 (citing *Davis*, 526 at 649.)

Defendants cite *Handley v. Rowan University* as setting a high bar for Title IX deliberate indifference claims, but—comparable to this case—this Court found that the plaintiff had sufficiently pled "remedial steps . . . [that] were woefully insufficient, and likely constituted deliberate indifference," to survive a motion to dismiss.  Civil No. 21–16889, 2022 WL 4115730, at *7 (D.N.J. Sept. 9, 2022) (unreported).

Defendants cite *Colavecchia v. South Side Area School District*, a Title IX hostile environment (not deliberate indifference) claim, where the court denied a motion to dismiss based on the district's _six-month_ delay in addressing an employee's Title IX complaint, making it comparable to this case.  2:22-CV-01804, 2023 WL 3043777, *2, *4 (W.D. Pa. Apr. 21, 2023).

Defendants cite *Roe v. Pennsylvania State University*, Civil Action No. 18-2142, 2019 WL 652527 (E.D. Penn. Feb. 15, 2019), which—unlike this case—showed the

University started investigating *within two days* of a Title IX complaint, which it resolved ten months later after several meetings and review periods.  *Id*. at * 2–3.

Finally, Defendants cite *McAvoy v. Dickinson College*, 1:20-cv-1327, 2023 WL 6276670 (M.D. Pa. Sep. 26, 2023).  Here, unlike this case, the plaintiff waited more than a month to file a formal complaint but received supportive measures in the interim. *McAvoy*, 2023 WL 6276670, *2–3.  The College also promptly issued a no contact order, which was limited due to the small campus, and resolved the Title IX process in less than six months before issuing a sanction of probation.  *Id*. at *3–4.  Under these facts, the court granted summary judgment as plaintiff had supported her claim with mere dissatisfaction rather than proof of anything clearly unreasonable.  *Id*. at *7.

## 2. *Cited Title IX Cases Outside the Third Circuit*

Defendants cite the First Circuit case *Doherty v. Emerson College*, No. 1:14-cv-13281, 2017 WL 4364406 (D. Mass. Sept. 29, 2017), which is not comparable to this case.  In *Doherty*, the plaintiff reported an older campus sexual assault, then did not pursue a criminal or Title IX charge or accept the offered safety measures since the accused was studying abroad.  2017 WL 4364406, at *2.  Despite this, the College initiated a Title IX complaint, issued a Stay Away Directive, and promptly investigated by proactively helping the victim identify a potential witness and allowing her to correct a related misidentification, while also informing her when the accused had left campus due to the accusation.  *See id*. at *2–3.  Thereafter, the College expelled the

accused and further supported the plaintiff, who reported ongoing harassment before withdrawing.  *See id*. at *7.  Understandably, under these differential facts, the court did not find "bias" as the plaintiff alleged.  *See id*. at *9 (finding the College "*promptly and seriously responded*," as it "commenced an investigation, issued a stay-away order, offered Doherty counseling, and . . . expelled the assailant.")

Defendants also cite the Second Circuit case *Tubbs v. Stony Brook University*, 343 F. Supp. 3d 292 (S.D.N.Y 2018), which is also distinguishable.  Here, the plaintiff declined to make a formal criminal or Title IX complaint, then decided to criminally document the incident without charges, and later proceeded under Title IX, causing the University to immediately issue a no-contact order.  343 F. Supp. 3d at 298–301, 312. The University interviewed four witnesses in a month, issued an interim suspension against the accused, and delayed the Title IX hearing so the plaintiff could decide whether to participate.  *Id*. at 301–04.  Thereafter, the plaintiff lost at the hearing, but the University still provided her counseling post-graduation.  *Id.* at 304–05.  The court did not find deliberate indifference, citing "promptness" as a key factor.  *Id*. at 309–11 (citing cases finding deliberate indifference for "lengthy and unjustified" delays).

Also in the Second Circuit, Defendants cite *Doe v. Trustees of Columbia University*, 21-Civ.-5839, 2022 WL 3666997 (S.D.N.Y. Aug. 25, 2022) (unreported). In this *pro se* action, the plaintiff delayed reporting an on-campus sexual assault for seven months.  *Doe*, 2022 WL 3666997, at *1.  Upon her complaint, the University

issued a notice of investigation and a no-contact order. *Id*., at \*1, \*5.  The University then experienced a turnover in Title IX staff, causing delay. *Id*., at \*6.  Before the pandemic and during the ongoing investigation, the accused filed a cross-complaint of stalking and reported a no-contact order violation, resulting in additional investigations. *Id*., at \*1, \*6–7.  The University resolved both complaints over a year later. *Id*., at \*1.  In dismissing the Title IX deliberate indifference claim, the court noted—unlike in this case—that the plaintiff had not presented any evidence showing an *unjustified* delay. *Id*., at \*18 (citing the University's brief explaining the Title IX process was delayed due to "multiple witnesses," a "substantial record," and only the "pandemic" in part).

Defendants also cite the Fourth Circuit case *Butters v. James Madison,* 208 F. Supp. 3d 745 (W.D. Va. 2016).  Significantly different than this case, the plaintiff suffered off-campus sexual assaults allegedly recorded and circulated on campus, and they did not "move forward against the Assailants" to "explore her options," resulting in her filing a Title IX complaint *nine months* later while officials checked on her in the interim.  *Butters,* 208 F. Supp. at 747–52.  Once she filed a complaint, the University promptly issued no-contact orders and found the "Assailants" responsible, but the plaintiff withdrew from the University when it decreased their sanctions on appeal.  *Id*. at 752–53.  The court found that the plaintiff's confidentiality request impeded the University's Title IX process, such that it was not deliberately indifferent

under Title IX. *Id*. at 755–56 (declining to apply "best practice" or "negligence" standards).

Also in the Fourth Circuit, Defendants cite *Fachetti v. Bridgewater College*, where the plaintiff delayed her on-campus rape report for months, but when reported, the police obtained a confession, resulting in the College promptly suspending the offender, who returned to campus after the sanction ended. 175 F. Supp. 3d 627, 632–33 (W.D. Va. 2016). While the plaintiff took issue with the College not following written policies, the court found her deliberate indifference claim a "mere conclusory label" because "upon receiving her complaint, an investigation occurred, a hearing was held, and [the perpetrator] was suspended." *Id*. at 633, 637–38.

Defendants also cite the Eighth Circuit case *Shank v. Carleton College*, 16-CV-1154, 232 F. Supp. 3d 1100, 1106 (D. Minn. Aug. 22, 2019), *aff'd*, 993 F.3d 567 (8th Cir. 2021). Similar to this case, the plaintiff alleged the College mishandled the Title IX process, safety measures, housing arrangements, and academic assistance, among other things. *Shank*, 232 F. Supp. 3d at 1106. Also like this case, she reported an official misled her about her rights regarding the Title IX process. *Id*. at 1106–07. Only after a Title IX hearing finding the accused responsible did the College issue a no-contact order as a sanction, which it did not serve on the offender, resulting in the plaintiff repeatedly seeing him on campus. *Id*. at 1107. The court found deliberate indifference based on these facts. *Id*. at 1110. Likewise, in this case, Defendants

10

misled Ms. Doe about her Title IX rights to delay her complaint and impede her equitable right appeal rights.  (Pl.'s SOF, ¶¶ 126 – 129, 206; Defs.'s SOF, ¶ 97.)

Finally, Defendants cite Ninth Circuit cases *Karasek v. Regents of the University of California*, 956 F.3d 1092 (9th Cir. 2020) and *Oden v. North Marianas College*, 440 F.3d 1085 (9th Cir. 2006).  Unlike this case, in *Oden*, the College issued a no-contact order during the Title IX process, and in *Karasek*, the College "was not idle" during the 8.5-month process.  956 F.3d at 1106.  While Defendants also cite *Emily O. v. Regents of the University of California*, this case holds that the "inquiry" of whether a "delayed investigation" constitutes deliberate indifference is "driven by the facts . . . not by general guidelines."  CV-20-08159, 2021 WL 1535539, *8 (C.D. Cal. Mar. 9, 2021) (unreported) (holding this inquiry "depends heavily on the surrounding circumstances, including the school's actions throughout this delay") (citing cases).

## B. Defendants Conceded T.D.'s On-Campus Rape of Ms. Doe is Actionable Title IX Harassment

Ms. Doe's on-campus rape is sufficient to constitute Title IX sexual harassment. *See, e.g., Carabello v. New York City Department of Education*, 928 F. Supp. 2d 627, 643 (E.D.N.Y. 2013) (citing cases).  Contrary to Defendants' claims, the Third Circuit has not adopted *Kollaritsch v. Michigan State University Board of Trustees*, 944 F.3d 613 (6th Cir. 2019) (requiring further "actionable harassment" after a Title IX

complaint before any finding of deliberate indifference),[4] which stands at odds with *Farmer v. Kansas State University*, 918 F.3d 1094 (10th Cir. 2019) (finding deliberate indifference when a recipient leaves a victim "vulnerable" to further harassment "without requiring . . . subsequent actual sexual harassment").  As such, this Court must follow *Davis*, which finds deliberate indifference when a recipient "at a minimum, cause[] students to undergo harassment or *makes them liable or vulnerable to it*."  526 U.S. at 645 (emphasis added).  This Court does not have to wander into this circuit split, however, as Defendants admitted T.D.'s on-campus rape is "sufficiently severe to constitute actionable sexual harassment . . . under Title IX" given their failure to deny this allegation as required by Fed. R. Civ. P. 8(b)(6).  (Pl. SOF, ¶ 84.)

### C. Ms. Doe Suffered Educational and Other Harms

After the on-campus rape, and without any interim safety measures in place, Ms. Doe *daily feared* T.D. entering Defendant Rutgers' Newark campus.  According to the U.S. Supreme Court, recipients are deliberate indifference when "at a minimum, [they] cause[] students to undergo harassment or *makes them liable or vulnerable to it*."  *Davis*, 526 U.S. at 645 (emphasis added); *Farmer*, 918 F.3d at 1097 (finding sufficient educational deprivation after a recipient left students accused of sexually assaulting a classmate "unchecked and without the school investigating," causing the victims to

---

[4] Even if *Kollaritsch* applied, the undisputed record shows that T.D. harassed Ms. Doe after the on-campus rape by sending two Snapchats and appearing nearby on a geo-locating app, causing Ms. Doe fear of T.D. stalking her.  (Pl. SOF, ¶¶ 107, 124.)

withdraw) (quoting *Davis*, 526 U.S. at 644–45).  Before the rape, T.D. came onto this campus weekly and regularly visited Talbott Apartments, which was across the street from his fraternity, and was where Ms. Doe resided.  (Pl. SOF, ¶¶ 20, 23, 27, 100, 102.) As an NJIT student, T.D. could cross-enroll in Defendant Rutgers' courses, attend events, and participate in its joint degree programs.[5]  (*Id.*, ¶¶ 5–9, 26.)  After reporting the rape, T.D. harassed Ms. Doe via Snapchat and appeared on a geo-locating app on her cell phone, suggesting potential stalking.  (*Id.*, ¶¶ 107, 124.)  Due to the lack of any interim safety measures from Defendants, Ms. Doe never returned to the Talbott Apartments and moved off-campus for the 2021–2022 school year.  (*Id.*, ¶¶ 66, 96, 100, 143; *contra id.*, ¶ 40.)  Ms. Doe returned to campus for disability-related services and education resources and to commute to her job.  (*Id.*, ¶¶ 24, 170, 198.)  She daily feared T.D. being nearby, but COVID-19 masks prevented her vigilance.[6]  (*Id.*, ¶ 218.) Ms. Doe suffered a lower GPA for the Spring 2020 semester, dropped courses and suffered negative health effects requiring ongoing therapy and a service dog.  (*Id.*, ¶¶ 122, 134, 139, 141, 154, 198, 218–224; Defs.'s SOF, ¶. 98)  Finding this situation intolerable, Ms. Doe eventually transferred schools to lose credits and take summer courses to keep on track with her original graduation timeline.  (*Id.*, ¶¶ 17, 223, 224.)

---

[5] Ms. Doe's neuroscience major required her to take NJIT courses.  (*Id.*, ¶¶ 16, 221.)

[6] Defendants take Ms. Doe's *post-transfer* comments of *ongoing* fear of running into T.D. as being "unrealistic" *out of context* by falsely implying that these statements related to her enrollment on its Newark campus.  (Pl.'s Opp. to Defs. SOF, ¶ 100.)

Notably, contrary to the claim in their brief (Defs.'s MSJ Brief, p. 11), Ms. Doe's withdrawal does support her Title IX claim for damages. *See, e.g., Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 447 F.3d 1282 (11th Cir. 2007).

Defendants cite *Davis* to claim peer harassment is "less likely" to create a hostile environment, though that case ironically found the exact opposite. 526 U.S. at 653–54. They also cite to *Carabello*,[7] but Ms. Doe has provided this Court evidence of "a concrete negative effect" on her education, as required by this case. 928 F. Supp. 2d at 643 (citations omitted). Finally, they cite to *Soriano ex rel. Garcia v. Board of Education of the City of New York*, where the court did not find sufficient educational deprivation absent "a systemic effect of denying the victim equal access to an educational program or activity." No. 01-cv-4961, 2004 WL 2397610, *5 (E.D.N.Y. Oct. 27, 2004) (unpublished) (finding a parent's decision to transfer a minor plaintiff to a new school after two *addressed* sexual harassment incidents was not sufficient). However, Ms. Doe did suffer systemic educational denial. As but one example, CARE Coordinator Anwaar Najmi denied her educational access by refusing to facilitate academic excuses and accommodations after the rape, delaying her report of Ms. Doe's rape to Title IX, altering her Title IX report and CARE notes to obstruct the rape report, and closing Ms. Doe's CARE file despite her needing ongoing support. (Pl. SOF, ¶¶ 22–24, 87–92, 117, 121, 131, 134, 139, 141, 142, 144, 154.) Indeed, Ms. Doe raised

---

[7] Defendants Rutgers' alleged quotation from this case is not found there within.

her GPA, but only after dropping courses and seeking additional support and resources, like in-person therapy, a service dog, and ongoing disability services. (*Id*., ¶¶ 122, 134, 139, 141, 154, 170, 198, 218–224; Defs.'s SOF, ¶ 98)

**II.   Point II: Genuine Issues of Material Fact as to Ms. Doe's Negligence Claim (Count IV)**

Counter to their claims, Defendants owed Ms. Doe a common law and statutory duty of care, *see* N.J.S.A. 18A:61E–2, and she timely served notice of claim against them per N.J.S.A. 59:1–1, *et seq*., which is not subject to an immunity defense under the New Jersey Charitable Immunities Act, N.J.S.A. 2A:53A–7, *et seq.*   Taking Defendants' arguments turn, with more detail *infra*, Defendants are not entitled to immunity because this case falls within the statutory exception for sexual assault claims, as Defendants exhibited willful, wanton, and/or gross negligence.  (Pl.'s SOF.) Defendants have a duty to protect students from threats of harm and can be held liable for their failure to do so when their conduct rises to the level of gross negligence, as is the case here.  (Pl.'s SOF ¶¶ 59–62, 75, 80–229.)  Ms. Doe timely provided notice of her negligence claim against Defendants on June 29, 2021, whose acts and omissions causing her harm were ongoing through May of 2021—well within the time frame for providing such a notice.  (*Id*., ¶¶ 209–215.)  Moreover, pursuant to Fed. R. Civ. P. 8(b)(6), Defendants waived this argument by failing to deny this allegation in their Answer.  (*Id*., ¶ 4.)  Finally, and ultimately, as discussed *infra*, there are material facts in genuine dispute to deny summary judgment on Count IV (negligence claim).

15

## A. The Charitable Immunity Act Does Not Bar Plaintiff's Negligence Claim

The Charitable Immunity Act *can* shield institutions like Rutgers from liability in certain limited circumstances, N.J.S.A. 2A:53A–7, *et seq*., but the Act creates an exception to its immunity for damages when they are caused by "willful, wanton, or grossly negligent" acts or omissions, N.J.S.A. 2A:53A–7(c).  That is exactly what Ms. Doe alleged and established through the record in this case, which means Defendants are not shielded by any immunity under the Tort Claims Act[8] nor any other law of New Jersey. (Pl.'s SOF.)  Furthermore, the New Jersey Campus Sexual Assault Victim's Bill of Rights Act, N.J.S.A. § 18A:61E-1, *et seq*., removes immunity for institutions *and* their employees for violations of the Act that are caused by their willful, wanton, or grossly negligent acts or omissions. N.J.S.A. § 18A:61E-6. Thus, there is no statutory bar preventing Count IV (Negligence) from proceeding as a matter of law. Ms. Doe need only demonstrate genuine issues of material fact regarding Defendants' willful, wanton, or grossly negligent actions to defeat their motion for summary judgment. (*Id.*; Pl.'s MSJ Brief.)

---

[8] N.J.S.A. 59:2–1.3(a) grants a public entity or public employee immunity from civil liability but states this will "not apply to an action at law for damages *as a result of sexual assault* being committed against a person, which was *caused by a willful, wanton, or grossly negligent act* of the public entity *or* public employee." (Emphasis added).  In this action, Ms. Doe brings a claim against Defendants for their gross negligence in causing her to be sexually assaulted and their willful, wanton, and grossly negligent post-assault conduct, which caused her additional psychological harm. Thus, Ms. Doe's claim fits into this statutory exception.  *See, e.g., E.C. by D.C. v. Inglima-Donaldson*, 470 N.J. super. 41, 51–53 (App. Div. 2021).

Gross negligence "is commonly associated with egregious conduct" and is "the upper reaches of negligent conduct." *Kain v. Gloucester City*, 436 N.J. Super. 466, 482 (App. Div. 2014) (citations omitted).  Accordingly, gross negligence exists on a scale above ordinary negligence and before recklessness as part of a *continuum of conduct* that extends into intentional acts.  *Steinberg v. Sahara Sam's Oasis, LLC*, 226 N.J. 344, 363 (2016) (emphasis added).  Gross negligence is more than inattention or mistaken judgment, *id*. at 364, and willful or wanton conduct is a higher standard than gross negligence, *id*. at 365–66.  In fact, "[c]onduct is considered willful or wanton if done with the knowledge that injury is likely to, or probably will, result." *G.S. v. Dep't of Hum. Servs.*, 157 N.J. 161 (1999) (citing *McLaughlin v. Rova Farms, Inc.*, 56 N.J. 288 (1970)).  In other words, this "implies an intentional deviation from a clear duty[.]" *Steinberg*, 226 N.J. at 366.  "To establish a claim of willful or wanton conduct, a plaintiff must demonstrate that defendant acted or failed to act with knowledge that injury would likely or probably result and with reckless indifference to that consequence." *Franco v. Fairleigh Dickinson Univ.*, 467 N.J. Super. 8, 38 (App. Div. 2021) (citing *Foldi v. Jeffries*, 93 N.J. 533, 549 (1983)).

Counter to Defendants' claim, Ms. Doe has sufficiently established that their conduct rises to the level of gross negligence or willful and wanton.  To support their misguided claim, Defendants only reference one paragraph under the Complaint's Count IV allegations.  (Def. MSJ Brief, p. 24; Compl. ¶ 129.)  However, Defendants'

myopic view of the allegations and record is not controlled. Ms. Doe alleged a *continuum of conduct*, spanning *over a year*, which includes Defendants' intentional acts, as the basis for Count IV.  (Compl., ¶¶ 43–100; Pl.'s SOF ¶¶ 59–62, 75, 80–229).

For instance, Defendants (1) failed to train resident hall security guards to prevent and address sexual assault risks (Pl.'s SOF, ¶ 75); (2) despite Ms. Doe's obvious intoxication, these guards allowed T.D., a non-student guest, to check-in and enter through the Talbott Apartments security checkpoint (*id.*, ¶¶ 82–83; Compl. ¶ 43); (3) intentionally misled Ms. Doe by alleging she could not file a Title IX complaint with Defendant Rutgers and then delayed acting on it for no reason (*id.*, ¶¶ 87–90, 126, 129); (4) failed to inform Ms. Doe about available safety measures and how she could receive them (*id.*, ¶ 65–67, 92); (5) failed to ask Ms. Doe if the VPVA office could release her rape report to the Title IX Office, all while knowing she could not access safety and academic measures without doing so (*id.*, ¶ 97); (6) silenced Ms. Doe through a confidentiality agreement (*id.*, ¶ 98); (7) refused to ban T.D. from the Newark campus for *over a year* (*id.*, ¶¶ 80, 95, 175, 179); (8) failed to preserve video evidence related to the sexual assault (*id.*, ¶¶ 145, 227); (9) failed to put in place any helpful safety measures to protect Ms. Doe, so she stopped living in Talbott Apartments (*id.*, ¶¶ 100, 110–114); (10) effectively forced Ms. Doe to live off campus due to their ongoing failure to provide her with safety measures (*id.*, ¶ 143); (11) delayed an investigation of Ms. Doe's complaint for months, while knowing she languished

without any supportive measures (*id.*, ¶ 155); (12) consistently failed to communicate information to Ms. Doe throughout the Title IX process, such as providing her with copies of T.D.'s appeals (*id.*, ¶¶ 206, 209, 212); and (13) repeatedly chose not to interview key witnesses while delaying *eleven months* to interview two, all while failing to provide Ms. Doe support and safety on campus (*id.*, ¶¶ 171–175, 199).

As a result of this continuum of misconduct—composed of Defendants' actions and inactions—Ms. Doe suffered an on-campus rape and resulting emotional and psychological injuries:

> Ms. Doe suffers from PTSD, which flows directly from the March 2020 sexual assault and how Rutgers University responded to Ms. Doe's report of the rape. . . . By misleading Ms. Doe the Defendants confused her and made her feel like it was she who was at fault and at risk of getting in trouble. . . . [E]very other authority figure in the school invalidated her experience and insinuated that it was her fault. She was told nothing could be done for her outside of pursuing criminal charges against T.D. . . . . Because the Defendants failed to provide Ms. Doe with proper guidance and did not ensure she felt safe on campus, she became withdrawn, mistrustful, and avoidant . . . . Ms. Doe told me she did not understand the investigative process, and this lack of transparency amplified and perpetuated the effects of the rape far beyond the sexual assault itself. Like victims of sexual assault who do not receive appropriate care and support immediately after their trauma, Ms. Doe developed PTSD.

(Pl.'s MSJ Ex. 25 (Plaintiff 5879, 5981–5982).)  This Court should find the above constitutes willful or wanton conduct, or, at least, gross negligence.  Specifically, Defendants were intentionally dilatory in their duties to Ms. Doe, providing her knowingly incorrect or misleading information, engaging in significant investigator delays, and withholding support and services to which she was entitled as a sexual

assault victim—which all violate N.J.S.A. § 18A:6E-2. They did this all while knowing Ms. Doe was a student with disabilities whose seizure condition was exacerbated during the process. (Pl.'s SOF, ¶¶ 22–24, 139, 154, 219.) At the very least, these arguments give rise to genuine issues of material fact precluding summary judgment for Defendants.

**B. Defendants Owed Plaintiff a Duty of Care and Breached that Duty**

Defendants nevertheless contend that, even if they are not immune, they did not owe a common law duty of care to Ms. Doe. As an initial matter, Defendant Rutgers incorrectly asserted that Ms. Doe's Negligence claim was only about post-sexual assault misconduct. However, her Complaint lays bare that Defendant Rutgers was negligent in allowing the sexual assault to occur in the first place:

> Despite Plaintiff's obvious intoxication, an unidentified employee of
> Defendant [Rutgers] working at Talbott Apartments residence hall allowed
> T.D. to sign-in as a guest sometime after 2 a.m.

(Compl., ¶ 43.) Arguably, despite this averment, which is not enumerated within Count IV of the Complaint, Ms. Doe incorporated this factual basis by reference to support it. (*Id.*, ¶ 123.) Moreover, Ms. Doe clarified this theory clear throughout discovery and her liability expert, S. Daniel Carter, provided an expert opinion on this exact topic. (Defs.'s MSJ Ex. 66 (Plaintiff 591) ("By failing to assess the risk to plaintiff Doe of allowing T.D. to sign-in as her guest late at night when she was intoxicated in a residence hall, Rutgers University fell below this standard of care to put Plaintiff Doe

in danger of the resulting rape.").)  Defendants' counsel also deposed Mr. Carter, so it is disingenuous for them to now claim that Ms. Doe has not provided them notice, and thus, it cannot prevail on Count IV as it relates to pre-assault negligence.

Regardless, Defendants still had a duty to protect Ms. Doe. To establish negligence, a plaintiff must show a legal duty, that this duty was breached, that the breach proximately caused a foreseeable injury, and that the plaintiff suffered damages. *Townsend v. Pierre*, 221 N.J. 36, 51 (2015) (citing *Polzo v. Cty. of Essex*, 196 N.J. 569, 584 (2008)).  Negligence is "conduct which falls below a standard recognized by the law as essential to the protection of others from unreasonable risks of harm." *Marshall v. Klebanov*, 378 N.J. Super. 371, 378 (App. Div. 2005) (quoting *Sanzari v. Rosenfeld*, 34 N.J. 128, 134 (1961)).  The question is "'whether [a] reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others' by his [or her] conduct." *Est. of Narleski v. Gomes*, 244 N.J. 199, 226 (2020) (quoting *Kelly v. Gwinnell*, 96 N.J. 538, 543 (1984)).  If a duty is to be imposed, there must be a foreseeable risk of harm.  *See, e.g., J.S. v. R.T.H.*, 155 N.J. 330, 337, (1998) (citing *Williamson v. Waldman*, 150 N.J. 232, 239, (1997)). Foreseeability is an issue reserved for a jury.  *Potomac Aviation, LLC v. Port Auth. of New York & New Jersey*, 413 N.J. Super. 212, 225 (App. Div. 2010).

In *Moretz v. Trustees of Princeton*, a former Princeton student brought suit for negligence related to a sexual assault committed against her by a professor.  Civil

Action No. 21–19822, 2023 WL 9017155, at *1 (D.N.J. Dec 29, 2023).  The plaintiff alleged that Princeton and the perpetrator owed duties of reasonable care to her as a 19-year-old graduate student, ensuring she and other students were protected from known risks of harassment, discrimination, as well as threats of physical and psychological harm.  *Id.* at *6.  The university knew the perpetrator had previously committed "sexual misconduct" yet failed to protect her.  *Id.*  Princeton's inaction and failure to take basic steps to protect the plaintiff supported the gross negligence claim above a speculative level. *Id.* The court found the pleadings sufficiently inferred the defendants had "failed to exercise scant care or diligence and that Plaintiff suffered natural and probably injuries as a result of this failure."  *Id.* at *5.  In short, the court found that the defendant university was grossly negligent in failing to prevent a foreseeable sexual assault.  The same can be said here, as Defendants failed to train their security guards (despite training residence hall staff) to protect a clearly intoxicated Ms. Doe from having a male student entering her residence hall to visit her late at night.  (Pl.'s SOF, ¶¶ 75, 82–83; Compl., ¶ 43.)  Defendants allowed T.D. into the Talbott Apartments to accompany an obviously and visibly intoxicated Ms. Doe, leaving her at risk.  (Pl.'s SOF ¶¶ 82–83; Compl. ¶ 43.)  The Defendants' actions and inactions failed to prevent this foreseeable rape from occurring.

Defendants also were negligent in protecting Ms. Doe thereafter, in violation of the New Jersey Campus Sexual Assault Victim's Bill of Rights, N.J.S.A. § 18A:61E-

2, and for the reasons more fully enumerated in Section II.A, *supra*. At a minimum, Ms. Doe shows there is a genuine dispute of material fact that Defendants were grossly negligent by showing conscious disregard for Ms. Doe's safety and wellbeing. Defendants' actions in failing to protect Ms. Doe from this foreseeable rape and further psychological harm by delaying and complicating the Title IX grievance process without proper safety measures constitute gross negligence for which they can be held liable. For the foregoing reasons, this Court should deny Defendants' motion for summary judgment.

## C. Plaintiff's Notice of Claim was Timely; Alternatively, Defendants Waived Their Ability to Contest the Timeliness of Plaintiff's Notice of Claim

Ms. Doe issued a timely notice of claim letter to Defendants on June 29, 2021. (Pl.'s SOF ¶ 4). On April 1, 2021—*thirteen months* (391 days) after the rape report—Defendant Rutgers denied T.D.'s appeal, ending the Title IX process without notifying Ms. Doe of the final sanctions imposed. (Pl.'s SOF, ¶ 209.) In fact, Defendants did not provide Ms. Doe with a copy of either of T.D.'s appeals or allow her to respond to them before issuing decisions, thus violating her Title IX right to an equitable process. (Pl.'s SOF, ¶¶ 28, 29, 205, 206, 209; Defs. SOF, ¶ 94, 99, 97.) On May 20, 2021, Defendants imposed a campus ban on T.D.—*fourteen months* after the rape report—yet failed to notify Ms. Doe, in violation of their duty to do so. (Pl.'s SOF at ¶ 211–213.) Put another way, Defendants' violations were ongoing, even after her Title IX Complaint to the U.S. Department of Education. (Pl.'s SOF, ¶ 202.) As such, Ms.

Doe's notice of claim was issued well within ninety (90) days of these ongoing violations, making it a timely notice. *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006) (applying the continuing violations theory for tolling litigation deadlines regarding claims arising from "the cumulative effect of a thousand cuts, rather than on any particular [single] action," such that "the filing clock cannot begin running with the first act, because at that point the plaintiff has no claim; nor can a claim expire as to that first act because the full course of conduct is the actionable infringement.")

Nevertheless, Defendants have *waived* any dispute about notice timeliness when responding to Ms. Doe's allegation on point (Compl., ¶ 124), as their averment reads: "Paragraph 124 calls for legal conclusions to which no response is required." (Answer, ¶ 124.) Defendants are mistaken, as Fed. R. Civ. P. 8(b) *requires* a party to respond to either: (1) admit, (2) deny, or (3) state the party lacks knowledge or information sufficient to form a belief about the truth of the allegation. Whether to conclusions of law or otherwise, Defendants cannot respond by asserting that no response is necessary under Fed. R. Civ. P. 8(b). *See, e.g., Kegerise v. Susquehanna Township Sch. Dist.*, 321 F.R.D. 121, 124 (M.D. Pa. 2016) (applying the rule even when a party makes sweeping conclusions of law). Instead, the effect of failing to deny an allegation in an Answer is this Court *must* deem the allegation *admitted*. Fed. R. Civ. P. 8(b)(6) ("Effect of Failing to Deny. An allegation—other than one relating to the amount of

damages—is admitted if a responsive pleading is required and the allegation is not denied."). Thus, Defendants' failure to deny in their averments on the timeliness of notice works as an admission to preclude summary judgment on Count IV.

**III.**     **Point III**: **Defendants' Attempt to Preclude Ms. Does' Expert in Their Motion is Procedurally Improper and Should be Disregarded Entirely**

Defendants' expert-related arguments are procedurally improper, as they do not comport with Fed. R. Civ. P. 56(a), which governs summary judgment motions. In their brief, Defendants seek to preclude Ms. Doe's expert, Mr. Carter, which is beyond the scope of Rule 56(a).  First, Defendants are attempting to utilize this improper forum and procedural juncture to have this Court make evidentiary rulings, all without the benefit of a required evidentiary hearing on point.  Therefore, Ms. Doe asks this Court to reject these arguments without prejudice as procedurally improper at this stage.

Second, Mr. Carter's opinions satisfy the requirements of Fed. R. Evid. 702.  The admissibility of "expert" testimony is a question of law governed by Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  "Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).  Rule 702 also assigns to the trial judge "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also* Fed. R. Evid. 104(a).  "By means of a so-called '*Daubert* hearing,' the district court acts as a gatekeeper, preventing opinion testimony that does not meet the

requirements of qualification, reliability, and fit from reaching the jury." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Whether this Court can admit Mr. Carter as a qualified "expert" and whether his report—or, truly, any proffered opinion—is admissible are questions for motions *in limine* with the benefit of a *Daubert* hearing. Accordingly, Defendants' arguments in "Point III" of their brief are improperly made at this procedural juncture and should be denied outright.

Notably, Defendants do not challenge Mr. Carter's expertise or the reliability of his methods. Rather, Defendants contend Mr. Carter's report usurps this Court's role in determining issues of law and invades the province of the jury. Nothing could be farther from the truth. While Mr. Carter uses terms such as "deliberate indifference" and "gross negligence" throughout his report and testimony, he does *not* offer any legal conclusions; rather, he uses those terms of art to explain deviations from the standard of care for universities in preventing and responding to sexual assaults or the risk thereof. (Defs.'s MSJ Ex. 66 (Plaintiff 5941) ("By failing to assess the risk to plaintiff Doe of allowing T.D. to sign-in as her guest late at night when she was intoxicated in a residence hall, Rutgers University fell below this standard of care to put Plaintiff Doe in danger of the resulting rape."). As within any field ripe for expert testimony, "industry standards" can be based upon, or at least take into consideration, laws governing practices and procedures in that field—and Mr. Carter's references to the same provides context for the campus safety industry's customs, practices, and norms.

Furthermore, in his deposition, Mr. Carter clarified that his use of the term "gross negligence" is not a legal conclusion but, rather, the term describing "a repeated pattern of making wrong decisions, failing to correct wrong decisions." (Defs.'s MSJ Ex. 11, 83:21–23.) Similarly, he notes the term "deliberate indifference" "comes from case law," which he utilized when referring to things that were, in his opinion, "clearly unreasonable in light of the known circumstances." (*Id*., 71:09–14.) Mr. Carter uses this term in his report to refer to "specific practices by the institution that were, in fact, conscious choices." (*Id.*, 84:10–18.) Understanding that Mr. Carter used those terms in those specific ways, Defendants' counsel repeatedly asked for his opinions as to whether specific acts of the Defendants qualified, in his opinion, as deliberate indifference or gross negligence. This Court should allow his report and testimony.

## IV.    <u>Point IV</u>: Ms. Doe's Entitlement to Damages

### A. Available Title IX Damage Claims Post-*Cummings*[9]

This Court should apply *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992) to award Ms. Doe all requested remedies since *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212 (2022), *rehearing denied* 142 S. Ct. 2853 (2022), did not overrule this Title IX precedent. Defendants correctly note that Ms. Doe filed her Title

---

[9] Arguments are largely pulled from Laura L. Dunn, *Much Ado About Cummings: The Curtailment of Civil Rights Enforcement and its Impact on Title IX*, 3 CREIGHTON. L. REV. 56, 277–297 (2023), https://cdr.creighton.edu/items/2f1cdc92-738a-4b39-86e5-de88c86b7872/full.

IX claims against Defendant Rutgers (Counts I–III) prior to *Cummings*. For each claim, Ms. Doe pled that she "sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a. Past, present, and future physical and psychological pain, suffering, and impairment;
    b. Medical and counseling bills, and all other costs and expenses for past, present, and future medical and psychological care;
    c. Loss of educational access and opportunity;
    d. Past, present, and future economic losses, including lost wages and benefits;
    e. Attorneys' fees and costs; and
    f. Such other and further relief that this Court deems just and proper."

(Compl., ¶¶ 112, 118, 122.) It is undisputed that Title IX's implied right of action bestows monetary damages. *See Hall*, 22 F.4th at 404 (citing *Franklin*, 503 U.S. at 76 & *Jackson*, 544 U.S. at 173 (citing *Cannon*, 441 at 690–93)). The only question before this Court is whether *Cummings* overruled *Franklin* to limit Ms. Doe's damage recovery to only pecuniary losses and harm.

Concerningly, the *Cummings* Court relied on an inaccurate interpretation of *Franklin* first advanced in *Barnes v. Gorman*, 536 U.S. 181, 187 (2002). Specifically, the Court wrongly claimed *Franklin* relied upon a "contract-law analogy," when this was only part of its analysis that was otherwise grounded in longstanding *stare decisis* and undisturbed common law principles. *See Cummings*, 596 U.S. at 212–13. Specifically, the *Franklin* Court found "money damages remedy . . . available under Title IX for an intentional violation *irrespective of the constitutional source* of

Congress' power to enact the statute" without deciding between § 5 of the Fourteenth Amendment or the Spending Clause.  503 U.S. at 75, n. 8; *see Cummings*, 596 U.S. at 219–20 (distinguishing the consent nature of legislative authority under the Spending Clause from the otherwise involuntary imposition of congressional policy on regulated parties under other sources of constitutional authority).  Specifically, the *Franklin* Court relied upon common law principles with "deep roots in our jurisprudence," 503 U.S. at 66 (citing *Davis v. Passman*, 442 U.S. 228, 246–247 (1979) & *Bell v. Hood*, 327 U.S. 678 (1946)), which "presume the availability of *all appropriate remedies* unless Congress has *expressly* indicated otherwise," *id*. at 66–68 (emphasis added) (identifying this as a "well settled" legal principal) (citing *Texas & New Orleans R. Co. v. Railway Clerks*, 281 U.S. 548 (1930)).  The *Franklin* Court also detailed an originalist common law-based argument in support of its authority to award remedies:

> From the earliest years of the Republic, the Court has recognized the power of the Judiciary to award appropriate remedies to redress injuries actionable in federal court, although it did not always distinguish clearly between a right to bring suit and a remedy available under such a right.

*Id.* at 66; *see also Texas & New Orleans R. Co.*, 281 U.S. at 569–70 ("The creation of a legal right by language suitable to that end does not require for its effectiveness the imposition of statutory penalties" since "[m]any rights are enforced for which no statutory penalties are provided" finding the "right is created and the remedy exists") (citing *Marbury v. Madison*, 5 U.S. 137, 165 (1803)).  The Court cited several cases in support, including *Texas & Pacific Railroad Company v. Rigsby*, 241 U.S. 33 (1916):

> A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied, according to a doctrine of the common law . . . .

*Franklin*, 503 U.S. at 67 (*quoting Rigsby*, 241 U.S. at 39).  In *Rigsby*, the Court found an implied right of action under the Federal Safety Appliance Act of 1893 and upheld a claim for monetary damages thereunder.  241 U.S. at 67 (citing *Dooley v. U.S.*, 182 U.S. 222, 229 (1901) ("[T]he principle that a liability created by statute without a remedy may be enforced by a common-law action.") & *Kendall v. U.S. ex rel. Stokes*, 37 U.S. 524 (1838) (authorizing a remedy for mail carriers when the statute provided a right but not a remedy stating, "if the remedy cannot be applied by the circuit court of this district, it exists nowhere.").  Affirming *without equivocation* that where there is a right of action, the common law allows courts to bestow a remedy, the *Franklin* Court then quoted Chief Justice John Marshall:

> [O]ur Government has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.

503 U.S. at 66–67 (*Marbury*, 5 U.S. at 165) (internal quotations omitted).  The *Franklin* Court unanimously affirmed this common law principle.  503 U.S at 68 (citing *Bell, J.I. Case Co. v. Borak*, 377 U.S. 426 (1964) & *Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 288 (1940)).  In doing so, it repeated in no uncertain terms that the "existence of a statutory right implies the existence of *all necessary and appropriate remedies*." *Id.* at 69 (quoting *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969)).  The only

exception to this rule is "clear direction to the contrary _by Congress_," otherwise holding "the federal courts have the power to award _any appropriate relief_ in a cognizable cause of action brought pursuant to a federal statute." _Id._ at 70–71 (emphasis added) (citing _Bush v. Lucas_, 462 U.S. 367, 378 (1983); _Wyandotte Transp. Co. v. U.S._, 389 U.S. 191, 200 (1967)).

Grounded in this wealth of longstanding jurisprudence, the _Franklin_ Court explicitly concluded that Congress intended the "traditional presumption in favor of _all appropriate relief_" for Title IX specifically by reviewing the state of the law at the time of its passage. 503 U.S at 70–71 (emphasis added) (citing _Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran_, 456 U.S. 353, 378 (1982)). _Cummings_ does not overrule _Franklin. Cummings_, 596 U.S. at 218 (claiming inaccurately that _Franklin_ does not describe the scope of "appropriate relief"); _Franklin_, 503 U.S. at 69 (finding _Davis_ "did nothing to interrupt the long line of cases in which the Court has held that if a right of action exists to enforce a federal right and Congress is silent on the question of remedies, a federal court may order _any appropriate relief_.") (Emphasis added). Specifically, the _Franklin_ Court found—since early 19th century jurisprudence—it had followed the common-law tradition to deny a remedy as "the exception rather than the rule." _Id._ at 72 (citing its approval of all remedies in other implied causes of action, citing _J.I. Case Co._, 377 U.S. 426; _Wyandotte Transp. Co._, 389 U.S. 191; & _Sullivan_, 396 U.S. at 229). The _Franklin_ Court applied the "same contextual approach used to

justify an implied right of action," which "more than amply demonstrates the lack of any legislative intent to abandon the traditional presumption in favor of all available remedies." 503 U.S. at 72. Again, the *Franklin* Court acknowledged its jurisprudence only ever limited available remedies when Congress *expressly* enumerated statutes limiting available remedies. *Id.* at 69, n. 6 (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)). It then found that—for Title IX—Congress has not expressly limited damages despite having the opportunity to do so.

To the contrary, the *Franklin* Court noted that, through the Rehabilitation Act Amendments of 1986, 42 U.S.C. § 2000d–7, Congress affirmed all Title IX remedies should be available to the "*same extent*" as "in the suit against any public or private entity other than a State." 503 U.S at 72–73 (citing Pub. L. 99–506, 100 Stat. 1830 (1986)) (abrogating Eleventh Amendment sovereign immunity pursuant to Title IX, Title VI, § 504 of the Rehabilitation Act of 1973, and the Age Discrimination Act of 1975). While Congress did not specify all the types of remedies available under 42 U.S.C. § 2000d–7(a)(2), the *Franklin* Court still "presume[d] Congress enacted this statute with the prevailing traditional rule in mind" regarding the broad availability of damages for a statutory-based right of action. 503 U.S at 73 (citing *Milwaukee v. Illinois*, 451 U.S. 304, 329, n. 22 (1981)). It also considered the Civil Rights Restoration Act of 1987. *Id.* at 73 (citing Pub. L. 100–259, 102 Stat. 28 (1987)). Congress had passed this legislation to overturn the Court's Title IX ruling in *Grove*

*City College v. Bell*, 465 U.S. 555 (1984), and the *Franklin* Court noted it "made no effort to restrict the right of action recognized in *Cannon* and ratified in the 1986 Act or to alter the traditional presumption in favor of any appropriate relief for violation of a federal right" at that time. *Id.* at 73 (emphasis added). Plainly put, the *Franklin* Court "cannot say . . . that Congress has limited the remedies available to a complainant in a suit brought under Title IX." *Id.* at 73. Indeed, Justice Scalia acknowledged such legislation "must be read, in my view, not only 'as a validation of *Cannon*'s holding,' but also as an implicit acknowledgment that damages are available." *Id.* at 78 (Scalia, J., concurring). As such, *Franklin* supports Ms. Doe's entitlement to all available remedies.

*Franklin* is the applicable precedent expressly governing Ms. Doe's Title IX claims, whereas *Cummings* is only controlling for § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) and the Affordable Care Act, 20 U.S.C. § 18116. 596 U.S. at 216–17. Unlike these other Spending Clause legislation affected by *Cummings*, Title IX is distinguishable as having an implied cause of action. *Cannon*, 441 U.S. 677; *but see A.T. v. Oley Valley Sch. Dist.,* Civil Action No. 17-4983, 2023 WL 1453143, *2, 4 (E.D. Penn. Feb. 1, 2023) (failing to differentially treat statutory rights of actions from implied causes of actions regarding the implication of *Cummings* for emotional distress damages) (citing cases). Again, the *Franklin* Court affirmed the common-law tradition of denying available remedy as "the exception rather than the rule" for all implied

33

causes of action.  *Franklin*, 503 U.S at 72 (citing *J.I. Case Co*., 377 U.S., at 433; *Wyandotte Transp. Co*., 389 U.S., at 207; *Sullivan*, 396 U.S. 229).  Such precedent remains undisturbed, and this Court must abide by it per *stare decisis*.  *See, e.g., Kimble v. Marvel Enter., LLC*, 576 U.S. 556, 457 (2015) (stating *stare decisis* allows parties to "rely on such precedents when ordering their affairs") (citations omitted); *see also Dobbs v. Jackson Women's Health Org*., 597 U.S. 215, 280 (2022) (announcing clearly when *stare decisis* no longer commands preservation of previous precedent).

All that said, if this Court is reticent to break with the trending (yet unsettled) interpretation of *Cummings*,[10] Ms. Doe suggests alternative grounds for awarding her non-pecuniary damages under Title IX pursuant to § 5 of the Fourteenth Amendment to the U.S. Constitution (hereinafter "§ 5").  The *Franklin* Court refused to decide whether Congress enacted Title IX under the Spending Clause and/or § 5, but importantly, "conclude[d] that a money damages remedy is available under Title IX for an intentional violation *irrespective of the constitutional source* of Congress' power to enact the statute." 503 U.S. at 75, n. 8.[11]  A few years later, in *Gebser*, the Court concluded Congress enacted Title IX under the Spending Clause. 524 U.S. at 287.  In

---

[10] *Much Ado About Cummings* at 11–12 (noting the minority of district courts are finding all damages available under Title IX while a majority are dismissing emotional distress claims) (citing cases).

[11] As such, as argued *supra*, *Franklin* did not rely upon a contract law analogy to reach its remedies holding.  Indeed, if *Cummings* prevent damages to Ms. Doe under the Spending Clause, this undisturbed holding implies Title IX is also authorized by § 5.

*Gebser*, for the first time, the Court spoke of the "contractual nature" of Title IX as having "implication[s] for our construction of the scope of available remedies." *Id.*  In so ruling, the Court still did not specify any remedy limitations or foreclose that Congress had also enacted Title IX under § 5. *Gebser,* 524 U.S. 274.  As a result, courts have held that Title IX may also have been authorized by Congress under § 5.  *See, e.g.*, *Franks v. Kentucky Sch. for the Deaf*, 142 F.3d 360, 363 (6th Cir. 1998) (holding that abrogation occurred under § 5 even if not expressly invoked by Congress) (quoting *Crawford v. Davis*, 109 F.3d 1281, 1283 (8th Cir. 1997)); *but see Doe 1, et al. v. The Curators of the Univ. of Mo.*, Case No. 19-cv-04229, 2022 WL 3366765, *2–3 (W.D. Mo. August 15, 2022) (rejecting the § 5 arguments while also rejecting *Crawford* as a basis for such a finding by stating Title IX "could" have been authorized under § 5 rather than holding this) (internal citations omitted).  This Court should find Title IX authorized by § 5 in addition to the Spending Clause to uphold *Franklin*, which left this Constitutional source of authority as a basis of damages.  503 U.S. at 75, n. 8.

In support of this interpretation, the U.S. Supreme Court has already taken judicial notice of widespread unconstitutional sex discrimination within education settings. *See, e.g.,* Emily J. Martin, *Title IX and the New Spending Clause*, AM. CONST. SOC., 12 (Dec. 2012) ("Title IX is not only an appropriate exercise of Congress's Spending Power; as applied to states; it is also an appropriate exercise of Congress's authority to enforce the Equal Protection Clause under [§] 5 of the Fourteenth

Amendment.") (citing *Nev. Dep't of Human Resources v. Hibbs*, 538 U.S. 721 (2003) & *U.S. v. Va.*, 518 U.S. 515 (1996)). In fact, when Congress passed Title IX in 1972, it had a significant body of evidence showing unconstitutional sex discrimination occurring in public schools, supporting its authority to act under § 5, which "protects against sex discrimination by state actors." *Id*. (*Virginia*, 518 U.S. 515.) Under the U.S. Constitution, "classifications on the basis of sex" are already "presumptively unconstitutional," and "evidence of a history of such classifications by states will in general establish a history of constitutional violations," thereby "justifying Congress' use of its authority under § 5 to pass Title IX." *Id*.

### B. Ms. Doe's Permanent Injury Meets the N.J.S.A. § 59:9–2(d) Threshold

Ms. Doe raises genuine issues of material fact regarding whether she has met the damages threshold under N.J.S.A. § 59:9–2(d). Pursuant to N.J.S.A. § 59:9–2(d),

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement, or dismemberment where the medical treatment expenses are in excess of $3,600.00.

In arguing against this, Defendants misconstrue the law and ignore medical records and expert opinions produced in the record that demonstrate Ms. Doe has met the permanent injury threshold. Defendants' dual efforts to avoid liability based on concocted technicalities unsupported by the record and their conflation of the law ultimately fall short due to the serious nature of the case and the extensive permanent

damage done to Ms. Doe by Defendants' utter failures to protect her from campus rape. Moreover, because genuine issues of material fact exist regarding these damages and related defenses, this Court must deny summary judgment.

To the extent that Defendants attempt to claim that recovery for permanent injury falls under "pain and suffering" to limit Ms. Doe's recovery, they would be mistaken. In *Reale v. Wayne Twp.,* the court explicitly clarified this when it stated,

> If the Legislature had intended the term 'pain and suffering' to encompass other elements of recovery such as permanent injury it would have been a simple matter for it to have said so. The court is unwilling to ascribe such an intent to the lawmakers in the face of the language of the section. *It is held as a matter of law that N.J.S.A. 59:9–2(d) does not bar infant plaintiff's potential recovery for permanent injuries regardless of her medical expenses.*

332 A.2d 236, 245 (N.J. Super. Ct. Law Div. 1975) (emphasis added).  Accordingly, if Ms. Doe proves permanent injury at trial, she is still entitled to recovery for the same.

N.J.S.A. § 59:9–2(d) requires psychological and emotional injuries to be treated the same as physical injuries when they arise in a context similar to that which precipitated Ms. Doe's injuries.  *Collins v. Union Cty. Jail*, 150 N.J. 407, 420–22 (1997) (finding "emotional trauma can be as disabling as a visible physical wound"). Notably, the New Jersey Supreme Court has already held that the psychological impact of sexual assault, like that Ms. Doe suffered, is sufficient to establish a permanent loss of a bodily function under N.J.S.A. 59:9–2(d).  *Id.*  Indeed, the legislature "recognized that fact" when enacting the Victim/Counselor Privilege Act, which found that

"psychological and emotional injuries of rape 'are often more serious than the physical injuries suffered.'" *Id.* (citing N.J.S.A. 2A:84A–22.13(a); N.J.R.E. 517). To meet the permanent injury threshold, a permanent loss need not be a total loss of function but must merely be substantial. *Id.* Therefore, Ms. Doe's psychological harm and its symptoms must be considered in assessing if she can meet the threshold.

In cases involving sexual assault, credible evidence from a medical professional tying psychological injury to sexual abuse can satisfy the permanent injury threshold. *Collins*, 150 N.J. at 420–2. In *Collins*, an inmate brought claims against the correctional facility after a single rape by a corrections officer. *Id.* The plaintiff testified about his damages that "since the sexual assault, he suffers from frequent nightmares, flashbacks, difficulty in sleeping, sudden outbursts of crying, screaming in his sleep, a severe loss of self-esteem, and an inability to trust others" and his psychologist, who treated the plaintiff for over a year after the rape, testified that he suffered from PTSD and "that there is a very high probability that the injury is permanent." *Id.* at 414–15. Notably, the inmate did not claim any physical injuries from the sexual assault. *Id.* However, the Court held that the plaintiff had satisfied the permanent injury threshold since the psychological impact was directly attributable to the sexual assault and "plaintiff allegedly lost the ability to function in a normal mental state." *Id.*

*Collins* is instructive in this case as there are many parallels between the damages suffered by its plaintiff and Ms. Doe.  For instance, Ms. Doe experienced severe emotional trauma because of the on-campus rape and Defendants' subsequent failure to remedy the resulting hostile environment.  What Defendants astoundingly neglect to acknowledge in their summary judgment motion is that Ms. Doe's damages expert, Dr. Lama Bazzi, a licensed psychiatrist specializing in the impacts of trauma (who they deposed for hours), unquestionably identifies significant psychological impact on her that is attributable to the sexual abuse T.D. perpetrated.  (Pl.'s MSJ Ex. 25 (Plaintiff 5979–5984).)  Dr. Bazzi's 15-page report discusses the sexual assault's psychological impact on Ms. Doe, including her increased stress and anxiety, distrust of others, fear, and the diagnosis of four separate disorders causally linked to the rape and Defendants' subsequent actions: (1) post-traumatic stress disorder (PTSD); (2) persistent depressive disorder; and the exacerbation of (3) functional neurological symptom disorder with seizures and (4) excoriation (skin-picking) disorder.  (*Id.* at 1–3 (Plaintiff 5971–5973).)  Dr. Bazzi based her conclusions on *four hours* of thorough clinical assessment and diagnostic testing.  (*Id.*)  In no uncertain terms, according to Dr. Bazzi, Ms. Doe suffered substantial and prolonged trauma likely to affect her life, even with proper therapeutic care and medication.  (*Id.* at 14 (Plaintiff 5984).)  Dr. Bazzi specifically opined in her report that "within a reasonable degree of medical certainty . . . my opinion that the campus sexual assault and the Defendants' response

to it were both the direct and proximate causes of Ms. Doe's physical and emotional disorders as they manifest today." (*Id.* at 1 (Plaintiff 5971).)  She also opined that Defendants' harm requires Ms. Doe to receive therapeutic treatment and medication "*likely for life*" to cope with or manage her conditions.  (*Id.* at 14 (Plaintiff 5984).) (emphasis added) (finding "Ms. Doe's psychiatric disorders are *chronic* and may improve but can be exacerbated again during stress. For example, her pre-existing seizure disorder is exacerbated by stress; thus, she will need "a therapy dog *for the foreseeable future*.").

Therefore, like in *Collins*, Ms. Doe suffered a preventable rape and has since been credibly diagnosed by a licensed professional with a trauma-related disorder because of that abuse.  Also, like in *Collins*, she has difficulty sleeping, is distrustful of others, has adverse reactions to physical intimacy, and perhaps most significantly, the impacts of the abuse are likely permanent.  Accordingly, as in *Collins*, Plaintiff's injuries can meet the threshold to establish permanent injury.  Defendants' attempt to limit the types of damages recoverable under Count IV must be rejected.

## CONCLUSION

Based upon the foregoing, Ms. Doe respectfully requests that this Court deny the Motion for Summary Judgment filed by Defendants in full and, in addition, she requests that this Court grant her pending summary judgment motion.

This the 19th day of June 2024.        Respectfully Submitted,

> s/ Laura L. Dunn
> Laura L. Dunn, Esq. (*pro hac vice*)
> L.L. DUNN LAW FIRM, PLLC
> 1717 K Street NW, Suite 900
> Washington D.C. 20006
> T: 202-822-5023
> F: 202-776-0136
> LLD@LLDunnLaw.com
>
> s/ Michael J. McFarland
> Michael J. McFarland (N.J. Bar No. 212292016)
> Gaetano D'Andrea (*pro hac vice*)
> LAFFEY BUCCI D'ANDREA REICH & RYAN, LLP
> 1100 Ludlow Street, Suite 300
> Philadelphia, PA  19107
> T: 215-399-9255
> F: 215-857-0075
> MMcfarland@laffeybuccikent.com
> GDAndrea@laffeybuccikent.com
> CVGDTeam@laffeybuccikent.com
>
> *Counsel for Plaintiff Veronica Doe*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served on all attorneys of record using e-mail on June 19, 2024, and then will be filed with the Court through its CM/ECF system on June 26, 2025, which will notify any CM/ECF participants of the same. Specifically, Plaintiff served opposing counsel:

William Maderer (wmaderer@saiber.com)
Vincent Cirilli (vcirilli@saiber.com)
SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932-2266
(973) 622-3333

*Attorneys for Defendant Rutgers,*
*The State University of New Jersey and Scott Strother*

This the 19th day of June 2024.          Respectfully Submitted,

s/ Michael J. McFarland
Michael J. McFarland (N.J. Bar No. 212292016)
LAFFEY BUCCI D'ANDREA REICH & RYAN, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
T: 215-399-9255
F: 215-857-0075
MMcfarland@laffeybuccikent.com
CVGDTeam@laffeybuccikent.com

*Counsel for Plaintiff Veronica Doe*