## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | |
|---|---|
| VERONICA DOE, | ) |
| | ) Civil Action No. 21-20763(ES)(MAH) |
| Plaintiff, | ) |
| | ) |
| v. | ) **PLAINTIFF'S RESPONSES TO** |
| | ) **DEFENDANTS' STATEMENT OF** |
| RUTGERS UNIVERSITY, the State | ) **UNDISPUTED MATERIAL FACTS** |
| University of New Jersey, & SCOTT | ) **PURSUANT TO L. CIV. R. 56.1** |
| STROTHER, in his personal and | ) |
| official capacity, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Veronica Doe ("Ms. Doe"), by and through counsel, and pursuant to L. Civ. R. 56.1(a), hereby submits these responses to "Defendants' Statement of Undisputed Material Facts Pursuant to L. Civ. R. 56.1" using their numbered paragraphs to indicate her agreement or disagreement, with the latter supported by citations to "Plaintiff's Statement of Material Facts Not in Dispute" (hereinafter "SOF"), which is hereby incorporated as part of this response for easy reference.

## I.   THE MARCH 6, 2020, INCIDENT[1]

1.   Ms. Doe agrees that these facts are undisputed.

2.   Ms. Doe agrees that these facts are undisputed.

---

[1] This "incident" is an undisputed on-campus rape by a third party, Tomasz Dulian, on Rutgers' Newark campus.  (Pl.'s SOF, ¶¶ 83, 203; Pl.'s MSJ Brief, p. 3, n. 3.)

3.      Ms. Doe agrees that these facts are undisputed.

4.      Ms. Doe agrees that these facts are undisputed.

5.      Ms. Doe agrees that these facts are undisputed.

6.      Ms. Doe disagrees with the time, which is 4:00 a.m., not 4:30 a.m., but agrees the remaining facts are undisputed.  (Defs.'s MSJ Ex. 15 (Rutgers 258).[2]

7.      Ms. Doe agrees that these facts are undisputed.

8.      Ms. Doe disagrees with the unsupported assertion that Defendant Rutgers' CARE Team had "campus safety" responsibilities but agrees the remaining facts are undisputed.  (Defs.'s MSJ Ex. 6 (Najmi dep., 20:11–25, 32:6–33:23).[3]

9.      Ms. Doe agrees that these facts are undisputed.

## II.   DEFENDANTS' INVESTIGATION INTO THE SEXUAL ASSAULT REPORTED BY PLAINTIFF AND INTERIM PROTECTIVE MEASURES

### A. Rutgers' Initial Supportive and Protective Measures Provided to Plaintiff and Rutgers University Police Department's <u>Commencement of Its Investigation</u>

10.      Ms. Doe objects under Fed. R. Evid. 401, 402, and 403, as VPVA–related evidence is irrelevant or otherwise lacks probative value, confuses the issues, and misleads the trier of fact.  *See* Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (requiring this Court to consider admissible evidence when

---

[2] *See* Fed. R. Civ. P. 56(e)(2) (allowing this Court to consider this correction, which is based on the record Defendants provided, to be undisputed).

[3] *See supra*, n. 2.

ruling on summary judgment motions).   In support, Ms. Doe shows that Najmi had a mandatory reporting duty to the Title IX office, not the VPVA Office, as the latter is a confidential resource *without* authority to take corrective action.  (Pl.'s SOF, ¶¶ 65–66.)  Ms. Doe disagrees that Najmi contacted the VPVA Office "immediately" but agrees the remaining facts are undisputed. (Defs.'s MSJ Ex. 6 (Najmi dep., 64:8–66:4).)

11.    Ms. Doe objects to this statement.  *See supra*, ¶ 10.  Ms. Doe agrees that these facts are undisputed.

12.    Ms. Doe objects to this statement.  *See supra*, ¶ 10.  Ms. Doe clarifies the VPVA Office took a <u>*confidential*</u> report governed by a confidentiality agreement but never asked her if she wanted this report released to the Title IX Office, which had the authority to take corrective action (unlike the VPVA Office) but agrees that the remaining facts are undisputed.  (Pl.'s SOF, ¶¶ 65, 66, 95, 97, 98.)

13.    Ms. Doe objects to this statement under Fed. R. Evid. 401, 402, and 403, as the criminal case is separate from the Title IX case, so this evidence is irrelevant or otherwise lacks probative value, confuses the issues, and misleads the trier of fact.  *See* Fed. R. Civ. P. 56(c)(2); *Celotex*, 477 U.S. at 322–23.  In support, Defendant Rutgers admitted the criminal case was separate from its Title IX grievance process.  (Pl.'s SOF, ¶ 68.)  Ms. Doe otherwise agrees that these facts are undisputed.

14.    Ms. Doe objects to this statement.  *See supra*, ¶ 13.  Ms. Doe agrees that these facts are undisputed.

15.    Ms. Doe objects to this statement.  *See supra*, ¶ 13.  Ms. Doe agrees that these facts are undisputed.

16.    Ms. Doe objects to this statement.  *See supra*, ¶ 13.  Ms. Doe agrees that these facts are undisputed.

17.    Ms. Doe agrees that these facts are undisputed.

18.    Ms. Doe clarifies that Defendant Rutgers failed to issue a no-contact order, campus ban/no trespass order, or safety plan against Tomasz Dulian (T.D.) and *never* informed her or T.D. that it had taken this *temporary* action of a *24-to-48-hour* residence hall ban, leaving her to stay elsewhere on campus and sign an off-campus lease a month later to ensure her safety, but she agrees that the remaining facts are undisputed.  (Pl.'s SOF, ¶¶ 27, 33, 36, 44, 48, 49, 50, 51, 54, 56, 57, 63, 64, 100, 110, 112, 115, 116, 143.)

19.    *See supra*, ¶ 18.

20.    Ms. Doe clarifies that Defendants acted under the *wrong* Title IX policies and procedures for *10 months*, until December 2020 (Pl.'s MSJ Ex. 22 (Plaintiff 3–47); Pl.'s SOF, ¶¶ 193–195), and she disagrees Defendant Strother ever informed her about interim safety measures (despite knowing the UPD had not offered them as part of the

criminal case) (Pl.'s SOF, ¶¶ 63, 64, 110–114).  Ms. Doe otherwise agrees that these facts are undisputed.

21.    Ms. Doe objects to this statement.  *See supra*, ¶ 13.  Ms. Doe agrees that these facts are undisputed.

22.    Ms. Doe objects to this statement.  *See supra*, ¶ 13.  Ms. Doe agrees that these facts are undisputed.

23.    Ms. Doe objects to this statement.  *See supra*, ¶ 13.  Ms. Doe adds that Defendants first asked to interview T.D. *five months* after her report, on July 30, 2020 (Pl. Opp. to Defs.'s SOF, Ex.1 (07/28-30/2020 Emails)), and he submitted a written statement instead on August 25, 2020, less than a month later (Pl.'s SOF, ¶ 173).  Ms. Doe otherwise agrees that these facts are undisputed.

24.    Ms. Doe objects to this statement.  *See supra*, ¶ 13.  Ms. Doe agrees that these facts are undisputed.

### B. Plaintiff's Presence on the Rutgers Campus Following the Incident and COVID-19 Pandemic

25.    Ms. Doe agrees that these facts are undisputed.

26.    Ms. Doe agrees that these facts are undisputed.

27.    Ms. Doe clarifies that she flew to Florida a few days before her scheduled spring break due to the campus rape and the lack of housing accommodations offered by Defendants in its aftermath (Pl.'s SOF, ¶¶ 100, 119; Pl. MSJ Ex. 1, ¶ 13).  Ms. Doe otherwise agrees that these facts are undisputed.

28.     Ms. Doe adds that, despite having virtual courses during the 2020-2021 school year, she routinely entered Defendant Rutgers' Newark campus to use the Office of Accommodations and Learning Assistance (OALA), health center, campus libraries, mail room, and to relieve her service dog as well as commute across campus to work and in-person counseling (Defs.'s MSJ Ex. 12 at Adm. No. 13; Pl.'s SOF, ¶ 170). Ms. Doe otherwise agrees that these facts are undisputed.

29.     Ms. Doe agrees that these facts are undisputed.

30.     Ms. Doe objects under Fed. R. Evid. 106 to Defendants *improperly* excluding her full testimony (Defs.'s MSJ Ex. 1 (Pl. dep., 67:18–68:6) (indicating her reason not to remain in on-campus housing was that she felt safer in the COVID-19 hotspot of Seattle than returning to campus following the rape given the lack of any safety measures from Defendants)) but agrees that the remaining facts are undisputed.

31.     Ms. Doe adds that she signed this lease *before* Defendants offered any housing accommodations (Pl.'s SOF, ¶¶ 40, 66, 96, 100, 110, 111, 116, 143, 152, 153). Ms. Doe otherwise agrees that these facts are undisputed.

32.     Ms. Doe agrees that these facts are undisputed.  *See supra*, ¶ 28.

33.     Ms. Doe objects under Fed. R. Evid. 401, 402, and 403, as her perception of parental support is irrelevant to this action or more prejudicial than probative, but she agrees that the remaining facts are undisputed.  *See* Fed. R. Civ. P. 56(c)(2); *Celotex*, 477 U.S. at 322–23.

34.     Ms. Doe agrees that these facts are undisputed.  *See supra*, ¶ 30.

35.     Ms. Doe agrees that these facts are undisputed.

36.     Ms. Doe agrees that these facts are undisputed.

37.     Ms. Doe agrees that these facts are undisputed.

38.     Ms. Doe agrees that these facts are undisputed.  *See supra*, ¶ 28.

39.     Ms. Doe adds she applied and accepted this transfer *before* the Spring 2021 semester ended (Pl.'s SOF, ¶¶ 215, 222) but agrees that these facts are undisputed.

**C. <u>Plaintiff's Title IX Complaint & Rutgers Title IX Office's Investigation</u>**

40.     Ms. Doe adds that she confirmed her desire to make a Title IX report on March 17, 2020 (Defs.'s MSJ Ex. 27 (Rutgers 3444) ("I would like to take the next step in filing a report.").  Ms. Doe otherwise agrees that these facts are undisputed.

41.     Ms. Doe clarifies Defendant Strother responded by *unlawfully denying* her right to file a Title IX complaint through Defendant Rutgers on March 16, 2020 (Defs.'s MSJ Ex. 27 (Rutgers 3445) ("Unfortunately . . . we do not have jurisdiction over student's [sic] at other institutions")), while he also needlessly delayed taking her complaint for the New Jersey Institute of Technology (NJIT) by falsely suggesting she had to meet in person (*id*. (Rutgers 3444) ("I would like to meet and discuss the matter you reported to []UPD") & (Rutgers 34453) ("Let me know what day Residence Life/Housing schedules you to move out and I will make myself available that day").  In doing so, he also needlessly withheld that she could immediately make the complaint

by phone or in writing (Pl. SOF, ¶¶ 125–132).  Ms. Doe otherwise agrees that these facts are undisputed.

42.     Ms. Doe disagrees that she delayed taking the next steps to make a report until she was back in town and instead points to the record showing that Defendant Strother required her to meet in person and did not offer her information to make her complaint sooner by phone or in writing. (Pl. SOF, ¶¶ 125–132.)

43.     Ms. Doe agrees that these facts are undisputed.

44.     Ms. Doe agrees that these facts are undisputed.

45.     Ms. Doe agrees that these facts are undisputed.

46.     Ms. Doe agrees that these facts are undisputed.

47.     Ms. Doe disagrees that Defendants' citation supports this statement.[4]  Ms. Doe clarifies that Defendant Strother first _falsely_ claimed that Defendant Rutgers lacked jurisdiction over her Title IX complaint and then _created_ a requirement that he _had_ to release her complaint to the NJIT _if_ she wanted action taken under Title IX. (Defs.'s MSJ Ex. 27 (Rutgers 3444–3445) ("Please be advised that the Office of Title IX . . . _only has jurisdiction_ over Rutgers University students and/or parties affiliated with Rutgers University (Outside Vendors, Contractors, etc.).  If the matter involves a student from another university, the information reported to _my office would be shared_

---

[4] _Contra_ Fed. R. Civ. P. 56(e) (outlining options for this Court to address these unsupported assertions of fact during the summary judgment phase).

*with the Title IX Coordinator of the school the Respondent attends for whatever action they deem necessary under their respective Title IX policy.* Unfortunately, as previously communicated, *we do not have jurisdiction over student's [sic] at other institutions*") (emphasis added)).    Finally, Defendants assumed Ms. Doe's "permission" because she wanted action on her complaint under Title IX.  (Defs.'s MSJ Ex. 27 (Rutgers 3444) (quoting Ms. Doe: "I would like to take the next steps in filing a report. The other person involved is not a student at Rutgers, so I understand the variability that comes along with that.").

48.    Ms. Doe disagrees that Defendants "interview[ed] [her] as part of Rutgers' Title IX investigation," as Defendants admit it never sent a notice of investigation after taking her complaint and did not assign a Title IX Investigator until July 21, 2020.   (Pl.'s SOF ¶¶ 135, 136, 156.)  Ms. Doe also disagrees that Defendants "collaborated" with the NJIT to obtain witness statements, as the record shows no established working relationship between the two entities on Title IX reports.  (Pl.'s SOF ¶¶ 11, 12.)  Instead, the record shows that Defendants only sought the NJIT's independently obtained witness statements in August 2020 (Defs.'s MSJ Ex. 40 (Rutgers 4077)), *after* Ms. Doe's counsel demanded they investigate under Title IX in

July 2020 (Defs.'s MSJ Ex. 30 (Rutgers 3949; Pl.'s SOF ¶¶147, 149), which the NJIT only sent in September 2020 (Defs.'s MSJ Ex. Ex. 44 (Rutgers 3696)).[5]

49.     Ms. Doe clarifies that Defendants did not assign Investigator Ponce to her complaint until July 2020 (Pl.'s SOF ¶ 156)—*five months* after Ms. Doe's report—and did not provide Investigator Ponce her complaint until September 2020—*six months* after Ms. Doe's report.   Then, Investigator Ponce did not interview any witnesses identified in the complaint until January 2021, *seven months*. (Pl.'s SOF, ¶ 199.)  Ms. Doe otherwise agrees that these facts are undisputed.

50.     Ms. Doe agrees that these facts are undisputed. *See supra*, ¶ 49.

51.     Ms. Doe clarifies that Defendants first asked to interview T.D. on July 30, 2020 (Pl. Opp. to Defs.'s SOF, Ex.1 (07/28-30/2020 Emails).)  He submitted a written statement instead on August 25, 2020 (Pl.'s SOF, ¶ 173), which is a day before the NJIT provided the same document to Defendants (Defs.'s Ex. 41 (Rutgers 3557)), but she otherwise agrees that these facts are undisputed.

52.     Ms. Doe agrees that these facts are undisputed.  *See supra*, ¶ 52.

53.     Ms. Doe agrees that these facts are undisputed.

---

[5] Defendants' statement seemly falls below the duty of candor to this Court.  *See* N.J. Ct. R. App. 3 R.R. 3.3(a).

54.    Ms. Doe clarifies that Defendants made no effort to ask her any questions on her complaint from March 30, 2020, to September 18, 2020, *over five months* later. Ms. Doe otherwise agrees that these facts are undisputed.

### D. Interim Protective Measures Rutgers Provided to Plaintiff Pending the Completion of Rutgers' Title IX Investigation

55.    Ms. Doe agrees that these facts are undisputed.

56.    Ms. Doe clarifies that Defendant Strother, as the Title IX Coordinator, should have already known about the availability of campus bans under Defendant Rutgers' Title IX policies and procedures, especially in light of its legal and policy requirements to provide her safety measures (Pl.'s SOF, ¶¶ 28–47).  Ms. Doe otherwise agrees that these facts are undisputed.

57.    Ms. Doe disagrees that only the UPD could issue a campus ban, as Defendant Rutgers testified its Offices of Employment Equity (OEE), Community Standards, Deans of Students, Title IX, and other departments had such authority, as confirmed by its Title IX policies and procedures.  (Pl.'s SOF, ¶¶ 48, 49, 51, 54, 56, 57.)  Ms. Doe otherwise agrees only that Defendant Rutgers lacked written policies governing the issuance of campus bans or systemic tracking requirements regarding the same.  (Pl.'s SOF, ¶¶ 53, 55, 58.)

58.     Ms. Doe disagrees with this unsupported statement.[6]

59.     Ms. Doe disagrees the UPD declined to impose a campus ban in July 2020, as the record shows it waited until August 2020, right before her return to campus.  Then it did not inform her that obtaining a civil restraining order could allow it to issue such a campus ban at a later date, instead refusing to serve her temporary civil restraining order against T.D. or issue such a ban until the end of the Title IX process, a *full year after her report*, in March 2021.  (Pl.'s SOF, ¶¶ 57, 149, 151, 164, 157, 158, 184, 207, 208).

60.     Ms. Doe objects under Fed. R. Evid. 403, as this evidence lacks any probative value, confusing the issues, and misleading the trier of fact.  In support, she notes Defendants only issued this residence hall ban *five months after* she had moved out of Talbott Apartments in March 2020 (Defs.'s SOF ¶ 35), signed an off-campus lease in April 2020 (*id*., ¶ 31), and her counsel had *demanded* Defendants provide her different interim safety measures in July 2020 (*id*., ¶ 55).  Notably, Defendant Rutgers did not even allow guests in residence halls, given its COVID-19 pandemic.  (*Id*., ¶ 26.)  Ms. Doe adds that Defendants never informed T.D. of this ban.  (Pl. SOF ¶ 153.)  Ms. Doe otherwise agrees that these facts are undisputed.

61.     Ms. Doe agrees that these facts are undisputed.  *See supra,* ¶¶ 18, 60.

---

[6] *See* Fed. R. Civ. P. 56(b) & L. Civ. R. 56.1(a) (requiring Defendants to cite to proof in the record); *see also* Fed. R. Civ. P. 56(d) (requiring this Court's deferral on this fact until the criminal case is decided one way or another).

62.     Ms. Doe clarifies that she wrote this email when Defendants were still considering a campus ban against T.D., as requested by her counsel, *see supra,* ¶ 59, and before the VPVA Office refused to advocate for her (Pl. SOF ¶¶ 137, 138, 162). At that time, she did not know that Najmi had excluded several of Ms. Doe's reports regarding academic issues from CARE team notes and closed her CARE team file despite Ms. Doe's need for ongoing support and resources.  (*Id.*, ¶¶ 91, 121, 131, 134, 139, 141, 144, 154.)  Ms. Doe otherwise agrees that these facts are undisputed.

63.     Ms. Doe clarifies that neither the UPD, the VPVA, nor the Title IX Office offered her any safety plan from March to July 2020, *four months* before her counsel *repeatedly* asked for such a plan between July and August 2020 to no avail.  (Pl.'s SOF, ¶¶ 63, 96, 151, 161, 163, 164–166).  Ms. Doe otherwise agrees that these facts are undisputed.

64.     Ms. Doe clarifies that Defendants agreed to offer her a safety plan after her counsel requested one in July 2020, but they never provided her with a finalized one thereafter.  *See supra*, ¶ 63.  Ms. Doe otherwise agrees that these facts are undisputed.

65.     Ms. Doe disagrees that Defendants ever issued a safety plan.  *See supra*, ¶¶ 63, 64.  (Pl.'s MSJ Ex. 2, Pl. dep., Ex. 28 (Rutgers 3469–3471) (quoting Ms. Doe: "I wanted to know what the next steps are on creating a safety plan, as I return to campus later this month," and Def. Strother: "What I need is your work schedule with

respect to you being on campus; as well as, the building you work in and the parking lot you are assigned to park," and Ms. Doe: "I have declined work study this year, so I will not be working on campus. Would a safety plan still be an option otherwise?" and Def. Strother: "What we can do is whenever you plan on coming to campus we can have a similar escorting system in place from your care to your location," and Ms. Doe replying: "I do not drive on campus, so we can communicate further on that as it gets closer to me returning. I have not been reached out to by []UPD, but need to do so for updates.")  There are no subsequent communications in the record by anyone to finalize the safety plan in the discovery record.  (Pl. MSJ Ex. 2, Pl. dep., 101:20–104:4.)

66.    Ms. Doe disagrees with this statement.  *See supra*, ¶ 65.

67.    Ms. Doe objects under Fed. R. Evid. 401, 402, and 403, as NJIT–related actions are irrelevant or otherwise lack probative value, confuses the issues, and misleads the trier of fact.  *See* Fed. R. Civ. P. 56(c)(2); *Celotex*, 477 U.S. at 322–23. In support, Ms. Doe shows it is undisputed that the NJIT had no authority over what happened on Defendant Rutgers' Newark campus to protect her, while Defendant Rutgers had such a duty and authority.  (Pl.'s SOF ¶¶ 11, 12, 48, 52, 63, 105.)  Ms. Doe otherwise agrees that these facts are undisputed.

68.    Ms. Doe clarifies that she *daily* feared T.D. being on Defendant Rutgers' Newark campus, which he had frequented weekly before the incident, as she could not identify him given that everyone wore masks during the COVID-19 pandemic.  (Pl.'s

SOF ¶¶ 26, 27, 218.)  Ms. Doe also adds that Defendant Rutgers had never taken any action to prohibit him from enrolling in its courses or attending its joint events with the NJIT during the pending Title IX complaint process, leaving her vulnerable to such contact with T.D.  (*Id*., ¶¶ 5–8, 25–27, 116, 211.)

69.     Ms. Doe adds that the UPD *failed* to serve this temporary civil restraining order on T.D. for *over four months*, between October 2020 and March 2021, and could have issued a campus ban upon its issuance but *refused* to do so.  (Pl.'s SOF, ¶¶ 57, 184, 207, 208.)  Ms. Doe otherwise agrees that these facts are undisputed.

70.     Ms. Doe clarifies Defendant Rutgers did not informed her about the right to obtain a civil restraining order for *four months*, between March and July 2020, until *after* her counsel *demanded* Defendants act upon her Title IX complaint and issue her related protective measures.  (Pl.'s SOF, ¶¶ 96, 137, 149, 151, 162.)  Furthermore, by and through the UPD, VPVA Office, and Title IX Office, Defendant Rutgers failed to offer her any assistance in obtaining such an order, as required per policy, leaving it to the prosecutor's office to send her the required application.  (*Id*., 137, 151, 160.)  Ms. Doe otherwise agrees that these facts are undisputed.

71.     Ms. Doe requests this Court take judicial notice under Fed. R. Evid. 201 that temporary civil restraining orders have no legal effect until served per the Due Process Clause of the U.S. Constitution.  As such, Ms. Doe clarifies that the UPD did not serve the temporary civil restraining order on T.D. until March 12, 2021, such that

he had no limit on accessing Defendant Rutgers' Newark campus or otherwise coming into contact with her for *six months*, from October 2020 to March 2021.  (Pl.'s SOF, ¶¶ 116, 184, 207, 208.)

72.     Ms. Doe agrees that these facts are undisputed.

73.     Ms. Doe objects per Fed. R. Evid. 502, which excludes attorney-client privileged communications.  (Defs.'s Ex. 1 (Pl. dep., 149:5–18).)  Ms. Doe otherwise agrees that these facts are undisputed.

## III.   RUTGERS' TITLE IX DETERMINATION

### A. Rutgers' Completion of its Title IX Investigative Report

74.     Ms. Doe clarifies Investigator Ponce did not "complete" this report until after interviewing witnesses in January 2021, *three months later* (Pl.'s SOF, ¶¶ 199–201) and otherwise agrees that these facts are undisputed.

75.     Ms. Doe disagrees that Defendants' citation supports this statement.[7]

76.     Ms. Doe agrees that these facts are undisputed.

77.     Ms. Doe agrees that these facts are undisputed.

78.     Ms. Doe agrees that these facts are undisputed.

79.     Ms. Doe agrees that these facts are undisputed.

---

[7] *Contra* Fed. R. Civ. P. 56(e) (outlining options for this Court to address these unsupported assertions of fact during the summary judgment phase).

80.     Ms. Doe adds that Defendants did *not* assign another Title IX investigator to avoid *further* delays to the complaint process caused by Investigator Ponce's medical issues, despite having a *60-day* Title IX investigation timeframe by policy, even when Investigator Ponce became unresponsive or failed to undertake the most basic investigative step of interviewing witnesses.  (Pl.'s SOF, ¶¶ 159, 189, 199.)  Ms. Doe also adds that Investigator Ponce admitted her investigation was "untimely, as in not promptly or quickly completed," and she "did have a concern with regards to how long it was taking," stating: "I just remember that I was essentially shocked that it was, you know, taking this long."  (*Id.*, ¶¶ 158, 200, 201.) Ms. Doe otherwise agrees that these facts are undisputed.

81.     Ms. Doe disagrees with this statement, as Defendants did not reach out to interview T.D. until July 30, 2020, and he responded with a written statement on August 25, 2020, showing his cooperation.  *See supra*, ¶¶ 23, 51.

82.     Ms. Doe agrees that these facts are undisputed.

83.     Ms. Doe agrees that Defendants used the *wrong* policy to investigate her Title IX complaint against a third-party offender for *10 months*, between March and December 2020.  (Defs.'s MSJ Ex. 51 (identifying Defendant Strother's error); Pl.'s SOF, ¶¶ 35, 36, 37, 127.).

84.     Ms. Doe agrees that these facts are undisputed.

85.     Ms. Doe agrees that these facts are undisputed.

86. Ms. Doe agrees that these facts are undisputed.

87. Ms. Doe clarifies that Defendant Rutgers' Title IX policies also had different procedures, particularly around who handles the complaints as well as applicable interim safety measures and sanctions available, making them substantially different. (Pl. MSJ Ex. 15 (Plaintiff 234–244) & Ex. 22 (Plaintiff 3–47); Pl.'s SOF, ¶¶ 32–41, 193.) Ms. Doe otherwise agrees that these facts are undisputed.

88. Ms. Doe agrees that these facts are undisputed.

**B. Rutgers' Determination and Imposition of Sanctions Against T.D.**

89. Ms. Doe agrees that these facts are undisputed.

90. Ms. Doe objects under Fed. R. Evid. 401, 402, and 403, as NJIT–related actions are irrelevant or otherwise lack probative value, confuses the issues, and misleads the trier of fact. *See* Fed. R. Civ. P. 56(c)(2); *Celotex*, 477 U.S. at 322–23. Ms. Doe otherwise agrees that these facts are undisputed.

91. Ms. Doe disagrees that Defendant Rutgers issued a "permanent" ban on T.D. on March 18, 2021 (Pl.'s SOF, ¶ 207), as his appeal was pending (*id.*, ¶¶ 205, 209, 210), such that it did not issue a campus ban as a final Title IX sanction until May 20, 2021 (*id.*, ¶ 211), without notice of the same to Ms. Doe or her counsel (*id.*, ¶ 212). Ms. Doe otherwise agrees that these facts are undisputed.

92. Ms. Doe clarifies that—after Defendant Rutgers issued a Title IX outcome on February 25, 2021—and Ms. Doe's counsel asked about any associated sanction in

several subsequent emails—Defendant Rutgers' counsel finally responded about a month later, on March 22, 2021, that the UPD had banned T.D. after serving the temporary civil protective order.  (Defs.'s MSJ Ex. 59 (Plaintiff 245–251) (showing Ms. Doe's counsel asking about the Title IX sanction and Defendants' counsel replying on February 26, 2021: "The report and determination are . . . provided to the University's administration for a determination of appropriate next steps."  When Ms. Doe's counsel asked what this meant, responding on March 10, 2021: "appropriate corrective action will be taken following expiration of the appeal period or, if an appeal is filed, following a decision affirming the determination."  When Ms. Doe's counsel again asked what this meant, Defendants' counsel responded on March 16, 2021: "The University is considering appropriate corrective action in the event that the determination is affirmed on appeal. Following the conclusion of the appeal process, and provided that the determination is affirmed, the University will communicate its . . . corrective action, as appropriate," and then stating on March 22, 2021, for the first time: "I understand that the TPO was served on the respondent on March 12. In addition, on March 18, the Rutgers University Police Department (RUPD) banned the respondent from Rutgers' campus.").  Ms. Doe otherwise agrees that these facts are undisputed.

93.    Ms. Doe agrees that these facts are undisputed.

94.     Ms. Doe adds that Defendant Rutgers never provided her a copy of this appeal or allowed her to respond to it, as required by Title IX regulations and policy entitling her to an equitable process, but it did inexplicably grant T.D. an unrequested extension to needlessly delaying this appeal process.  (Pl.'s SOF, ¶¶ 28, 43, 205, 206.)

95.     Ms. Doe agrees that these facts are undisputed.

96.     Ms. Doe adds that Defendants never provided her notice of this final Title IX sanction (Pl.'s SOF, ¶ 212) but agrees that these facts are undisputed.

97.     Ms. Doe adds that Defendant Rutgers never informed her of this appeal, provided her a copy of it, or allowed her to respond to it, as required by Title IX regulations and policy entitling her to an equitable process (Pl.'s SOF, ¶¶ 28, 43), but she otherwise agrees that these facts are undisputed.

98.     Ms. Doe clarifies that she obtained medical and counseling treatments, including a service dog to manage her seizure condition, and dropped courses to improve her GPA impacted by the on-campus rape during the Spring 2020 semester, and has not had to drop any courses since transferring schools.  (Pl.'s SOF, ¶¶ 122, 140, 141, 154, 198, 219, 224.)

99.     Ms. Doe disagrees as she applied and accepted this transfer *before* the Spring 2021 semester or the Title IX process ended (Pl.'s SOF, ¶¶ 202–215, 222).

100.    Ms. Doe objects under Fed. R. Evid. 106 since Defendants excluded the full context of this deposition quote taken on October 24, 2022, more than a year after

she left Defendant Rutgers' Newark campus, while she was stating she still fears him locating her to this day.  (Pl. MSJ Ex. 2, Pl. dep., 1, 169:1–170:20); Pl.'s SOF, ¶ 220.)

101.   Ms. Doe objects under Fed. R. Evid. 401, 402, and 403, as NJIT–related actions are irrelevant or otherwise lack probative value, confuses the issues, and misleads the trier of fact.  *See* Fed. R. Civ. P. 56(c)(2); *Celotex*, 477 U.S. at 322–23. Ms. Doe clarifies that T.D. contacted her twice via Snapchat after the rape in March 2020, and he came into proximity with her during the Spring 2021 semester.  (Pl.'s SOF, ¶¶ 107, 124.)  Ms. Doe otherwise agrees that these facts are undisputed.

102.   Ms. Doe agrees that these facts are undisputed.  *See supra*, ¶ 71.

103.   Ms. Doe disagrees with this statement.  *See supra*, ¶ 63.

104.   Ms. Doe agrees she could not identify T.D. after the rape while on Defendant Rutgers' Newark campus since everyone wore masks.  *See supra*, ¶ 63.  Ms. Doe otherwise agrees that these facts are undisputed.

105.   Ms. Doe objects under Fed. R. Evid. 401, as only incidents involving T.D. are relevant to this action.  *See* Fed. R. Civ. P. 56(c)(2); *Celotex*, 477 U.S. at 322–23. Ms. Doe otherwise agrees that these facts are undisputed.

106.    Ms. Doe adds that Defendants have admitted this notice was "timely" served on them (Pl.'s SOF, ¶ 4) and she agrees that these facts are undisputed.

****************************

This the 19th day of June 2024.     Respectfully Submitted,

s/ Laura L. Dunn

Laura L. Dunn, Esq. (*pro hac vice*)
L.L. DUNN LAW FIRM, PLLC
1717 K Street NW, Suite 900
Washington D.C. 20006
T: 202-822-5023
F: 202-776-0136
LLD@LLDunnLaw.com

s/ Michael J. McFarland

Michael J. McFarland (N.J. Bar No. 212292016)
Gaetano D'Andrea (*pro hac vice*)
LAFFEY BUCCI D'ANDREA REICH & RYAN,
LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA  19107
T: 215-399-9255
F: 215-857-0075
MMcfarland3@laffeybuccikent.com
GDAndrea@laffeybuccikent.com
CVGDTeam@laffeybuccikent.com

*Counsel for Plaintiff Veronica Doe*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served on all attorneys of record using e-mail on June 19, 2024, and then will be filed with the Court through its CM/ECF system on June 26, 2025, which will notify any CM/ECF participants of the same. Specifically, Plaintiff served opposing counsel:

William Maderer (wmaderer@saiber.com)
Vincent Cirilli (vcirilli@saiber.com)
SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932-2266
(973) 622-3333

*Attorneys for Defendant Rutgers,*
*The State University of New Jersey and Scott Strother*

This the 19th day of June 2024.      Respectfully Submitted,

s/ Michael J. McFarland
Michael J. McFarland (N.J. Bar No. 212292016)
LAFFEY BUCCI D'ANDREA REICH & RYAN, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA  19107
T: 215-399-9255
F: 215-857-0075
MMcfarland@laffeybuccikent.com
CVGDTeam@laffeybuccikent.com

*Counsel for Plaintiff Veronica Doe*